F. H. GILCREST LUMBER COMPANY, APPELLANT, V. JOSEPH
WILSON, APPELLEE.

FILED JUNE 11, 1909. No. 15,603.

1. **Sales:** WARRANTY. Where a vendee induces a dealer in agricultural
   implements to order for him a machine which the dealer has
   never previously sold or handled, and as to which he neither has
   nor professes to have any knowledge as to whether it will answer
   the purpose for which it is purchased, except certain statements
   made by an agent of the manufacturer, which statements he com-
   municates to the vendee, at the same time expressly informing
   him that he has no personal knowledge in regard to the qualities
   of the machine and that it is sold without any warranty, and
   these facts are within the vendee's knowledge at the time of the
   purchase, there is no implied warranty that the machine is rea-
   sonably fitted for the purpose for which it is purchased.

2. ———: ———. Where a known, described and definite article is
   ordered of a dealer, although it is required for a particular pur-
   pose, still if the known, described and definite article be actually
   supplied, there is no implied warranty that it will answer the
   purpose of the buyer.

3. Evidence examined, and *held* insufficient to sustain the verdict.

APPEAL from the district court for Dawson county:
BRUNO O. HOSTETLER, JUDGE. *Reversed.*

*H. M. Sinclair* and *Warrington & Stewart,* for appel-
lant.

*E. A. Cook, contra.*

BARNES, J.

Plaintiff sued to recover the agreed purchase price of
a corn picker sold and delivered to defendant at his re-
quest. Defendant admitted the purchase of the machine
at the agreed price, and for a defense to the action
alleged, in subtsance, that the machine was purchased by
defendant to pick corn, and that plaintiff represented
and warranted that the machine would gather corn suc-
cessfully, and that it was suitable and adapted for the

purpose of corn picking. He further alleged that, after a fair trial, the machine did not work satisfactorily and did not pick corn successfully, and that he offered to return the machine to plaintiff, who refused to accept it. A trial resulted in a verdict and judgment for the defendant, from which plaintiff has appealed.

It is contended that the verdict in this case is not sustained by the evidence. We think there is much force in this contention. It appears that the defendant informed one Pontius, the agent of the plaintiff at Overton, Nebraska, that he wanted to purchase a corn picker. It further appears that plaintiff at the time of the sale did not handle and never had handled or sold corn pickers; that it did not have them listed for sale; that its agent had never seen such a machine; and that he did not have or profess to have any knowledge as to whether it would pick corn satisfactorily, or could be operated successfully. With full knowledge of the situation, defendant informed Pontius that he had been trying to get a corn picker for more than a year, but had so far been unable to do so. Pontius thereupon informed him that the machines were sold without any warranty, and that they did not deal in them, but he thought he could procure one for him. He also informed the defendant that he would call up Mr. Pilant, the agent of the International Harvester Company, who handled and controlled the sale of the McCormick corn picker, and ascertain if one could be purchased. Shortly afterward he informed the defendant of the result of his interview with Pilant, and also told him what Pilant said about the machines. At defendant's request Pontius ordered the machine in question, and the International Harvester Company acknowledged the receipt of the order by a letter written from Omaha, Nebraska, which reads as follows: "Gilcrest Lbr. Co., Overton, Neb. Gentlemen: We have your letter of the 23d ordering a corn picker. We took this matter up with our Mr. Pilant today, who is at Grand Island, and the picker goes forward today from Council Bluffs. These corn pickers are

shipped out without any warranty, and cash settlement must be made before the machine is delivered. These machines are priced to you at $250 f. o. b. Chicago, and you are expected to get nothing less than $350 for them. Yours truly, International Harvester Company, By B. L. Rees, Gen'l Agt." When the plaintiff received the letter above quoted, Pontius handed it to the defendant, who admits that he read at least a part of it, and when the machine arrived at Overton defendant received it, unloaded it from the car, and took charge of it without any assistance on the part of plaintiff. As above stated, he was unable to make it work successfully, and the International Harvester Company sent an expert machinist to his place to assist him in putting the machine in proper order. When he offered to return the machine, plaintiff having become absolutely liable for its purchase price, refused to accept it. The defendant refused to pay for it, and hence this suit.

The defendant, when on the witness stand, admitted that the machine was sold to him without any warranty or guaranty. In fact his testimony did not differ from that given by Mr. Pontius, but after being recalled he then testified that, when he said the machine was purchased by him without any warranty, he meant any written warranty. It also appears that he told one A. G. Bronzell, who resided in Overton, that he had ordered a corn picker which was to cost him $350 and was sold to him without any warranty. On cross-examination this witness testified as follows: "Q. And it was to cost him $350? A. I think that is it. Q. And you say you asked him what kind of a guaranty he was to get, and he said he wasn't to get any? A. I think that was it, yes, or words to that effect; just about like one man would talk to another in conversation on the street. I asked him what kind of terms they sold them on. Those are the words I used, I think, and he said spot cash. Q. Did you ask him about a warranty? A. Yes, sir; I asked him what kind of a warranty they gave him with it, and he said they gave

no warranty.   I think the lumberman, also told me that."
One A. B. Franceour, who was a rival implement dealer,
doing business in Overton, testified as follows: "Q. Do
you remember the circumstance of Wilson coming into
your office in November, 1906, and telling you he had
bought a corn picker?   A. Yes, sir.   Q. I wish you would
relate the conversation that was had between you and
Wilson at that time.   A. Well, he come in and said he
had finally got a corn picker.   Q. What was said further
than that, if you remember?   A. Well, I asked him if he
had a guaranty with the corn picker, and he said no.   Q.
He told you who he had bought it from?   A. Yes, sir."   It
seems to us from the foregoing evidence that the record
quite conclusively establishes the fact that the defendant,
when he purchased the corn picker in question, under-
stood that he was buying it without any warranty either
express or implied, and therefore the evidence contained
in the record is insufficient to sustain the verdict.

Plaintiff complains of the fifth instruction to the jury.
As stated above, the evidence shows that plaintiff did not
expressly warrant the machine, but defendant contends
that the law implied a warranty that the machine was
reasonably fitted and adapted to the purpose for which
he purchased it, viz., that of picking corn.   The court
adopted this theory, and by the instruction complained
of informed the jury, in substance, that, in the absence
of an express agreement that the machine was purchased
at defendant's risk, the law implied that it was reason-
ably suitable for the purpose for which it was intended
to be used, and if the jury were satisfied by a preponder-
ance of the evidence that the machine was not reasonably
suited for the purpose of picking corn, and that defend-
ant made a reasonable effort to make it work, and gave
plaintiff a reasonable opportunity to make it work, and
if it did not then do reasonable work in picking corn, and
defendant offered and was still ready to return it to
plaintiff, they should find for the defendant.   The rule is
well established that, where a manufacturer or dealer

contracts to supply an article which he manufactures, or in which he deals, for a particular purpose, so that the buyer necessarily trusts to the judgment or skill of the manufacturer or dealer, there is in such a case an implied warranty that the article shall be reasonably fit for the purpose to which it is to be applied. Newmark, Law of Sales, sec. 333; Benjamin, Sales (4th ed.), sec. 657; *Omaha Coal, Coke & Lime Co. v. Fay,* 37 Neb. 68. Under the facts proved, it is clear that the case does not fall within the rule above announced. The reason for the rule is that the purchaser relies upon the superior knowledge and judgment of. the dealer in the purchase of the machine. If the dealer who sells the machine is a manufacturer thereof, or is dealing generally in such machines, he is presumed to have a knowledge of the machine, and to know whether it is suitable and fitted for the purpose for which it is purchased, and the buyer has a right to rely upon such knowledge. In the instant case it is clearly disclosed that the plaintiff neither had, nor professed, any knowledge as to the fitness of the machine to perform the work for which defendant desired it. The defendant could not therefore have relied upon any supposed superior knowledge or judgment of the plaintiff in relation to it.

The machine which the defendant purchased was known as the "McCormick Corn Picker," and was the one which defendant desired plaintiff to order for him. The rule is also well established that, where a known, described and definite article is ordered of a dealer, although it is required for a particular purpose, still, if such article be actually supplied, there is no implied warranty that it shall answer the purpose of the buyer. *Oil Creek Gold Mining Co. v. Fairbanks, Morse & Co.,* 19 Colo. App. 142, 74 Pac. 543; *Cosgrove v. Bennett,* 32 Minn. 371; *Goulds v. Brophy,* 42 Minn. 109; *Ehrsam v. Brown,* 76 Kan. 206, 15 L. R. A. (n. s.) 877; *Davis Calyx Drill Co. v. Mallory,* 137 Fed. 332. Under the facts as shown by the record, it was reversible error for the court to instruct the jury

that there was an implied warranty that the machine was reasonably suited for the purpose for which defendant purchased it.

For the foregoing reasons, the judgment of the district court is reversed and the cause is remanded for further proceedings.

REVERSED.

ROOT, J., concurring.

I concur in the judgment of reversal upon the sole ground that the fifth instruction should not have been given, for the reason that it informs the jurors that there was an implied warranty that the machine was reasonably fit for the purposes for which it was sold. The evidence seems to the writer to be conflicting, but will justify a finding that defendant did not rely entirely on his own judgment in purchasing the chattel, but depended upon plaintiff to furnish him a machine that would be of some practical service. Plaintiff's agent, although denying that the machine was warranted, testified: "Well, in this case it was only warranted against defective material and workmanship, against breakage," so that there was not an entire absence of warranty. It does not seem to the writer that the evidence is conclusive that defendant ordered a McCormick corn picker. Plaintiff's agent, through whom the sale was made, makes no such claim. Defendant testified that he knew that plaintiff handled the McCormick machine, but he stated that he did not know where or from whom they would secure him one, but said: "I told him that we wouldn't quarrel about the price if he could get one, *so long as it worked.*" It seems to me that this is not a case for the application of the "known, described and defined article" rule. It will be observed that defendant did not have an opportunity of examining the machine before the order was sent. Whether a sale was consummated before the machine arrived in Overton, the record does not plainly disclose. If, before paying anything on or accepting the machine,

defendant had an opportunity to examine it, and failed to do so, this element would be eliminated. The evidence is not clear on this point.

· The rules relative to the existence or nonexistence of implied warranties are succinctly set forth in *Jones v. Just,* L. R. 2 Q. B. (Eng.) *197, and it seems to me that the instant case should have been submitted to the jury to say whether the facts warranted the application of the fourth or fifth rule there stated; that is, whether in making said purchase defendant, without an opportunity to inspect the chattel, bought it, relying on the judgment of plaintiff to secure him a machine that was reasonably suited for picking corn. If he did, he had a good defense to this action, and, if he did not, a judgment in his favor cannot be sustained.

DEAN, J., dissenting.

I do not believe the verdict in this case should be disturbed. The jury was fairly instructed upon both the plaintiff's and the defendant's theory of the case. It passed upon all the questions of fact from the evidence before it and found in favor of the defendant, and to my mind was justified in so doing. The judgment of the trial court ought to be affirmed.