# CASES

DETERMINED IN THE

# APPELLATE COURTS OF ILLINOIS

DURING THE YEARS 1927 AND 1928.

## The Christian Mills, Inc., Appellant, v. Berthold Stern Flour Company, Appellee.

### Gen. No. 31,697.

1. CONTRACTS—*liquidated damages on buyer's breach of contract to purchase flour to be manufactured.* A provision in a contract for the sale of flour to be manufactured and shipped when directed by the buyer, that the seller shall recover as liquidated damages on flour unshipped, by reason of the buyer's breach, the total from a formula amounting to (a) about 19 cents per bushel of flour resulting from the loss upon the wheat to be made into flour, (b) about 38 cents per bushel of flour covering interest on the cost of the wheat, insurance and storage for a period of four months between the dates of the contract and the date of the breach, and (c) the amount of the decline between the highest closing price per bushel of wheat on the date of the contract and the date of the breach, the buyer to be given a corresponding credit if the price had advanced—held fair and reasonable and, therefore, binding upon both parties.

2. CONTRACTS—*damages based upon wheat on buyer's breach of contract to purchase flour.* It is proper for a contract for the sale of flour to provide that the flour need not be manufactured if the buyer does not furnish shipping directions, and that in such case the damages to the seller shall be estimated upon the wheat to be made into flour instead of upon the flour.

3. CONTRACTS—*date to be used in considering rule for estimating damages.* The reasonableness of the contract rule for estimating damages on the breach of a contract for its sale of flour must be considered as of the date of the contract and not as of the date of the breach.

4. CONTRACTS—*mutuality of obligation and of performance.* A contract for the sale of flour which provided that the buyer should furnish

1

shipping directions; that the seller upon receiving the directions should manufacture and ship the flour as directed; that the buyer be given one rule for damages as to flour shipped and refused and another as to flour for which no directions were given; and that the seller be given a rule for damages on a breach by the seller, held not lacking in mutuality of either obligation or performance.

5. SALES—*necessity of buyer performing conditions in proper time.* Where a contract for the sale of flour provides that the seller shall pay a certain sum as carrying charges during an extension of the time for him to furnish shipping directions, an offer of the buyer to pay the charges is ineffectual when not made before the time of the seller's termination of the contract for failure of the buyer to furnish shipping directions within the limited time.

Appeal by plaintiff from the Superior Court of Cook county; the Hon. WILLIAM N. GEMMILL, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1927. Reversed and remanded. Opinion filed December 21, 1927. Rehearing denied January 6, 1928.

CARLETON H. PENDLETON, for appellant; H. L. HOI-DALE, of counsel.

SCHOENBROD & ROSENGARD, for appellee; LOUIS EX-STEIN, of counsel.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

On June 1, 1925, Christian Mills, Inc., the plaintiff, brought suit in assumpsit in the superior court of Cook county, Illinois, against Berthold Stern Flour Company, a corporation, the defendant, to recover damages for an alleged breach of contract. On January 12, 1925, a written contract had been made by which the plaintiff agreed to manufacture and sell, and the defendant agreed to buy, 3,000 barrels of "Christian's Special Patent" flour, at $8 per barrel. Of that amount the defendant took and paid for 500 barrels and no more. The plaintiff declared the contract broken as to the remaining 2,500 barrels, and charged the defendant with damages therefor in the sum of $4,052.34, which amount the defendant refused to pay. This suit was

brought to recover that amount as liquidated damages. The contract of purchase and sale contained provisions expressly specifying the manner in which damages accruing to either party as the result of a default should be ascertained. At the trial plaintiff proffered evidence to show the amount of damages, calculated in accordance with the express provisions of the contract. The trial judge before whom the case was tried refused to admit such evidence of damages, and held that the terms of the contract, which expressly provided for the measurement of the plaintiff's damages, were nugatory in that they provided for a penalty, and that the plaintiff could only recover as damages the difference between the price which the defendant agreed to pay for the flour, and the lower market value, if it were lower, at the time of the breach.

The plaintiff, after having proved the contract and that it was breached, proffered evidence to prove the amount of damages in accordance with the specific provisions of the contract, and, upon that evidence being rejected by the court, rested its case, without introducing any evidence to show the lower market value of the flour at the date of the breach.

On November 30, 1926, at the close of all the plaintiff's evidence, and on the motion of the defendant, the court instructed the jury to find the issues for the defendant. Motions by the plaintiff to set aside the verdict, grant a new trial, and in arrest of judgment, were all denied, and on the same day, judgment was entered that the defendant do have and recover from the plaintiff its costs and charges, and have execution therefor. This appeal is from that judgment.

The pleadings consist of a declaration, a plea of the general issue, and an affidavit of merits. The declaration alleges that the plaintiff, a corporation of Minneapolis, Minnesota, was engaged in the business of manufacturing flour out of wheat and selling it under the trade name or brand of "Christian's Special Patent";

that on January 8, 1925, the defendant made a written offer to the plaintiff to buy "3,000 bbls. flour, in 140 size Jute packages, Christian's Special Patent, price $8.00 per bbl."

The declaration sets forth the whole of the defendant's offer, in addition to what is above recited. It contains the following:

"Ship to Berthold Stern Flour Co. Destination Chicago, Illinois. To be shipped on or before April 1, 1925, 10c per bbl. carrying charge after April 1st.

"Question: Is buyer hereafter to furnish directions for shipment for the above goods within the time or times last above written? Answer: Yes.

"Railroad delivery desired at destination: to be given before delivery time. * * *

"Par. 1. Subject to limitations herein, seller's wrongful failure or refusal to substantially perform its part of contract shall authorize buyer to purchase within 30 days after seller's breach, in open market at manufacturer's prices, in quantity equal to that which seller fails or refuses to ship, goods of the same quality as herein contracted for and recover, as liquidated damages, excess of price so paid over purchase price herein. * * *

"Par. 2. On breach of contract by buyer, liquidated damages shall be recoverable by seller as follows:

"2nd. As to any of the above flour remaining unshipped by reason of buyer's breach, seller shall recover damages as follows: (a) a sum equal to 4c multiplied by the number of bushels of grain required to make such unshipped flour, figuring 4¾ bushels to the barrel of flour; plus (b) a sum equal to 2c multiplied by the said number of bushels which sum shall be calculated for each 30 days, or fraction thereof, intervening between date of this contract and date of breach; plus also (c) amount of decline, if any, per bushel from date of this contract to date of breach, in

the highest closing price at Minneapolis of said grain, such price to be No. 1 Northern Spring Wheat.

"In case of a rise in such price of such grain between said dates, instead of decline, seller shall recover the sums at (a) and (b) above, less a sum determined by multiplying amount of such rise per bushel by said number of bushels, such prices on date of contract and date of breach being taken to determine amount of decline or rise per bushel. Any carrying charges paid on such flour only shall also be deducted from seller's said recovery. If there is neither rise or decline in such price, seller shall recover the sums at (a) and (b) above, less such carrying charges paid, if any.

"Par. 3, Clause (2). If indicated by affirmative answer (written on face hereof) to question within, that buyer is hereafter to furnish directions for shipment, buyer shall (without prior request therefor being made), be obligated to specify date or dates for shipment, which shall not be later than date, or last day of period, appearing in writing on face hereof immediately following the printed words, 'To be shipped,' or last day of last extended period, if any; also quantity and  *  *  *  package or assortment wanted;  *  *  *. His failure or refusal to so furnish directions shall give seller right, as to any of within goods remaining unshipped by reason thereof, to either: (a) treat contract as if rescinded; or (b) extend time herein limited for buyer to furnish directions, or any extended time, if any, 30 days, and thereafter (as long as buyer's said failure or refusal continuous) continue the life of this contract by as many such successive extensions as seller may desire; or (c) ship such goods within 30 days after expiration of time limited to furnish directions or last day of last extended period, if any; or (d) terminate contract (as to such unshipped goods only) at 5 o'clock P. M. Central Time, on last day of time limited herein for buyer to

6        APPELLATE COURTS OF ILLINOIS.

Christian Mills v. Berthold Stern Flour Co., 247 Ill. App. 1.

furnish directions or on last day of last extended period, if any, and recover on such unshipped goods, damages as set out in sub. 2nd of Par. 2, construing date of such termination to be date of breach. If seller desires to exercise any of said rights last above (a), (c) or (d), it shall at least five days before expiration of time limited herein for buyer to furnish directions or last day of last extended period, if any, give buyer written notice of such intention, specifying approximate date of shipment, in case of election to ship. Mailing of such notice to buyer to within or known address shall be compliance with this Par., time to be calculated from date of mailing, which shall count as first day. If notice is not so given, seller shall be deemed to have elected under sub. (b) of this Clause (2) and this contract shall automatically extend itself as to any such goods so remaining unshipped, for 30 days at a time, subject to the hereinbefore mentioned carrying charges against buyer, until buyer furnishes directions for shipment of such goods, or one of the said rights (a), (c) or (d) is exercised.

"Par. 5. Buyer shall pay seller for any and all extensions or postponements of shipment, shipping date or time limited to furnish directions (whether at buyer's request or otherwise), carrying charges equal to one-third cent per barrel per day on flour.

"Par. 7. This contract shall not bind seller, until it has mailed, * * * its acceptance or confirmation hereof, from its said Minneapolis office. It is expressly agreed that this is a contract to sell by description and not by sample, goods to be manufactured, and goods shall not be deemed manufactured until shipped. No salesman of seller can modify this contract or waive any of its terms.

"Par. 8. In fixing damages as set out in sub. 2nd of Par. 2, and sub. (d) of Clause (2) in Par. 3, the desire is for a certain mode of calculation, since seller's

actual loss cannot be predetermined, would be difficult of ascertainment, and a matter of argument and unprofitable litigation, it being agreed that said mode is an equitable rule for measurement of seller's prospective actual loss; sum allowed seller, in each of said subdivisions, being for decline in grain price, if any, and such inconvenience, damage (general and special, speculative and certain), expense and loss as may result from buyer's default or breach, or may have been incurred. Seller shall not be required to prove any actual loss in order to recover damages as in said subdivisions provided, and no provision shall be construed as a penalty, as such is not the intention. As to sub. 2nd of Par. 2: grain prices refer to grain (of grade mentioned) known at Chamber of Commerce, Mpls. as 'cash' grain 'delivered,' and such prices as shown by 'Daily Market Record' of Mpls., shall be conclusive, unless proved materially erroneous. 'No. 1 Northern Spring' refers to a certain grade of spring wheat, adopted or fixed from time to time in Minnesota.''

The declaration further alleges that the above-mentioned offer was duly accepted in writing by the plaintiff at Minneapolis, on January 12, 1925, as follows:

''The Christian Mills  *  *  *  sold to Berthold Stern Flour Co.  *  *  *  Chicago, Illinois. Date of sale January 8, 1925.  *  *  *  3000 bbls. Christian's Special Patent $8.00 per barrel, 140's Jute. Shipment on or before April 1, 1925. 10c per bbl. carrying charge after April 1st. Freight allowed to Chicago, Ill. Ship to Chicago, Ill.  *  *  *  Draft through Foreman National Bank. We have entered your order as per details given above in accordance with the terms and conditions of contract No. 2555 dated Jan. 8, 1925.''

It further alleges that on March 26, 1925, pursuant to shipping directions, the plaintiff shipped to the de-

fendant 500 barrels of flour, which were accepted and paid for by the defendant; that the defendant failed to furnish the plaintiff with shipping directions for the remaining 2,500 barrels within the time limited, that is, on or before April 1, 1925, and that on the expiration of that time, the time limited for the defendant to furnish shipping directions was extended for a period of 30 days pursuant to sub. (b) of clause (2) of par. 3 of said contract, which time would expire May 1, 1925;

That on April 24, 1925, the plaintiff notified the defendant that such contract would be terminated, pursuant to sub. (d) of clause (2) of par. 3, on May 1, 1925, as to any part of the 2,500 barrels of flour which might then remain unshipped, for failure to furnish shipping directions; that at the expiration of the time limited in the plaintiff's notice, it did on May 1, 1925, terminate the contract as to the remaining 2,500 barrels of flour, under the terms above mentioned in sub. (d) and charged the defendant with damages, as authorized by the said sub. (d) in the amount of $4,052.34; that at the time of the termination of the contract, 2,500 out of the 3,000 barrels of flour had not been shipped solely for the reason that the defendant, in breach of its contract, failed to furnish the plaintiff with shipping directions;

That the highest closing price per bushel at Minneapolis of No. 1 Northern Cash Spring Wheat, delivered on January 8, 1925, the date of the contract, was $1.76⅜; and that the price of such wheat per bushel at Minneapolis on May 1, 1925, the date of breach, or termination of the contract, was $1.54¼, making a total decline in price of the above-mentioned wheat between the date of contract and the date of breach of 22⅛ cents per bushel; that the plaintiff was at all times ready, able and willing to perform its part of the contract and to manufacture for and ship to defendant the remaining 2,500 barrels of flour; that the damages, which the plaintiff is entitled to recover on defendant's

breach, calculation being based on 11,875 bushels of wheat computing 4¾ bushels to each of the remaining 2,500 barrels of flour, as specified in clause 2nd of par. 3, of the said contract—are as follows:

"(a) 4c x 11875 . . . . . . . . . . . . . . . . . . . . . . . . .$475.00

(b) 2c x 11875 x 4 (the number of periods of 30 days each intervening between date of contract and date of termina-tion) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  950.00

(c) Decline, per bushel, in wheat price aforesaid, 22⅛c x 11875. . . . . . . . . . . . . .2627.34

Total sum which plaintiff is authorized to recover from defendant on defendant's aforesaid breach of the said contract, calculated in accordance with Clause 2nd of Par. 2 of said contract, pur-suant to subdivision (d) of Clause (2) of Par. 3 of said contract. . . . . . . . . . . .4052.34'';

That on May 4, 1925, the plaintiff notified the defendant of the termination of the contract and demanded payment of the sum of·$4,052.34, but the defendant failed to pay any part thereof, and by reason of the premises that amount, with legal interest at 5 per cent per annum from May 4, 1925, is due the plaintiff.

In the affidavit of merits of the defendant, it is stated that by the contract in question it was agreed that the defendant was not obliged to take delivery of the flour on April 1, 1925, but that it was mutually agreed that plaintiff would carry the flour and retain possession of it, without making deliveries until such time as the defendant would have use for such flour, conditioned upon the defendant paying the plaintiff a sum equal to 10 cents per barrel carrying charge after April 1, 1925, and that the defendant has been at all times ready, able and willing, and offered to pay the plaintiff the sum of 10 cents per barrel, but that the plaintiff refused to accept it; that contrary to the provisions of the

contract, the plaintiff committed a breach thereof, by advising the defendant on or about May 2, 1925, that it would no longer be obligated under the terms of the contract, and that it had canceled it.

At the trial all the material allegations of the declaration were proved, but no evidence was put in to show the price of wheat on the date of the contract and on the date of the breach and the trial judge ruled without such evidence the plaintiff had failed to make out a cause of action.

The substantial question in the case is whether the contract provisions for the measurement of the plaintiff's damages on the 2,500 barrels of flour which were not shipped were valid as a matter of law—Williston on Contracts, sec. 777—and should have been recognized and applied at the trial in the determination of the case.

The written offer of the defendant of January 8, 1925, to buy 3,000 barrels of flour, which were to be manufactured by the plaintiff, provided, among other things, that if the plaintiff failed to perform its part of the contract, the defendant might recover as liquidated damages, according to a certain formula set forth in the offer, and if the defendant, as buyer, failed to perform, liquidated damages should be recoverable by the seller, according to a certain formula. And when the written offer of the defendant was thereafter, on January 12, 1925, accepted by the plaintiff, and the contract in question came into being, it contained the provisos as to the computation of damages, in case of a failure to perform either by the buyer or by the seller, which were originally made by the defendant in its offer of January 8, 1925.

The provision as to damages recoverable by the defendant, in case of the plaintiff's failure to perform, is that the defendant might purchase, "within 30 days after seller's breach, in open market at manufacturer's prices, in quantity equal to that which seller fails or

refuses to ship goods of the same quality as herein contracted for, and recover, as liquidated damages, excess of price so paid over purchase price herein.''

The provision for damages recoverable by the plaintiff in case of a breach by the defendant is as follows: "Liquidated damages shall be recoverable by seller as follows:'' as to any of the *flour shipped* which the defendant wrongfully refuses to pay for or accept, "seller may resell same at public or private sale, without notice, and recover from buyer thereon the difference between purchase price thereof herein contracted, and price obtained on resale, if the latter be less than the former; and all incidental loss, such as salesman's time and expense, demurrage, storage, cartage, additional freight, reconsigning charges, etc. and any carrying charges unpaid on such goods.''

"2nd. As to any of the above flour remaining unshipped by reason of buyer's breach, seller shall recover damages as follows: (a) a sum equal to 4c multiplied by the number of bushels of grain required to make such unshipped flour, figuring 4¾ bushels to the barrel of flour; plus (b) a sum equal to 2c multiplied by the said number of bushels which sum shall be calculated for each 30 days, or fraction thereof, intervening between date of this contract and date of breach; plus also (c) amount of decline, if any, per bushel from date of this contract to date of breach, in the highest closing price at Minneapolis of said grain, such price to be No. 1 Northern Spring Wheat.''

In par. 7 of the contract there is the following: "It is expressly agreed that this is a contract to sell by description and not by sample, goods to be manufactured, and goods shall not be deemed manufactured until shipped.'' The evidence shows that the flour was not in existence at the time the contract was made; that it was to be manufactured and shipped as the defendant might call for it, from time to time, on or before April 1, 1925, or within such extended period as

the plaintiff might sanction under sub. (b) of clause (2) of par. 3 of the contract. The contract provided that in the event the plaintiff consented to any extension of time for the defendant to furnish shipping directions, the defendant would become bound to pay the plaintiff for any such extension at the rate of 10 cents per barrel for each 30 days of extension granted. Under the contract, it was optional with the plaintiff whether or not it would grant the defendant any extension of time for the furnishing of shipping directions.

It is the evidence of R. W. Goodell, vice president of the plaintiff, that on receipt of the "contract" dated January 8, 1925, the plaintiff bought 14,250 bushels of wheat to make the 3,000 barrels of flour; that it took 4¾ bushels of wheat to make one barrel of flour; that the plaintiff paid for that wheat and put it in storage in readiness to be made into flour as the flour might be called for; that the plaintiff took delivery of the wheat into its elevator, unloaded it, paid for it, and held it to manufacture the flour in question, and that it took 2,375 bushels of wheat to manufacture the 500 barrels of flour that were shipped to the defendant and paid for by it, and that there was then left a balance of 11,875 bushels of wheat in the plaintiff's hands under the contract; that the 11,875 bushels were carried by the plaintiff until May 2, 1925, when it was sold. When the witness was asked at what price per bushel the wheat was purchased, and if the plaintiff paid the market price for the wheat on January 8, 1925, objections were made by the defendant and sustained by the court; and when the witness was asked at what price the plaintiff sold the 11,875 bushels on May 2, 1925, and whether the plaintiff sold the 11,875 bushels on May 2, 1925, at the market price, objections were made by the defendant and sustained by the court; and, also, when the witness was asked what was the market price of the wheat on May 2, the day it was sold by the plaintiff, objection was made by the defendant and sustained

by the court, the trial judge saying, "This is a purchase of flour; it must have had a market value on that day. * * * The market value of the flour on that day would be the correct measure of damage." When the witness was asked, "Do you know if there was any market value for flour on that day?" he answered, "There is no fixed market value for flour at any time, and at any place." He further stated that "Christian's Special Patent" flour was a straight grade of flour, but not a standard flour; that there is no definite market in the United States for this straight grade flour, nor was there between January 8 and May 1, 1925; that there is no fixed market price for different grades of flour; that the price of flour is always a matter for negotiation; that it has no fixed market price.

In our judgment it is the law that if the contractual formula, as to the measurement of damages, which the defendant prescribed in its offer, and which became an integral part of the completed contract, was fair and reasonable—having in mind the particular business involved, and the kind of merchandise to be manufactured and sold, which was "Christian Special Patent" brand of flour—then the formula which pertained to the measurement of the seller's damages should have been recognized in the trial of the case as lawful and properly binding upon both parties, and appropriate evidence admitted to prove the allegations of the declaration.

In treating of the excuse of conditions and promises which would cause a forfeiture or penalty, Williston, in his work on Contracts, section 769, says:

"Though the law cannot create contractual obligations which are not based on the expressed intention of the parties, it can excuse the performance either of conditions or promises agreed upon by the parties for any reasons which seem to be just. The mere fact that a promise or condition is somewhat harsh or unfair in its operation is not enough to furnish such an excuse,

but a principle of somewhat vague boundaries prohibits the enforcement of forfeitures or penalties.''

Are the terms of the contract for the measurement of the damages fair, reasonable and just? At the outset, it is to be noted that the parties did not agree upon a lump sum as liquidated damages, but upon a rule whereby the damages might be computed: a rule which seems to have been formulated as the result of great experience in, and full knowledge of, the flour business.

First. The rule, par. 2, 2nd (a), measures the loss upon wheat, the raw material out of which the flour was to be made—figuring 4¾ bushels of wheat to a barrel of flour—at 4 cents per bushel, or the equivalent of, approximately, 19 cents per barrel. Certainly that amount of profit would neither be harsh, nor unfair, nor unjust. Then, too, that provision obviated what might be something exceedingly difficult of accomplishment, that is, to make proof, with any degree of accuracy, of what the actual net profit per barrel to the manufacturer would be. The parties having agreed that the net profit should be considered as, approximately, 19 cents per barrel, in order to avoid the difficulties and expense that would be attendant upon proving it in the course of litigation, obviously, it follows that by so doing it was not only no evidence of an intention to create a penalty, but evidence, on both sides, that it was fair and just.

Second. Sub. (b), which provides that a sum equal to 2 cents multiplied by the number of bushels, which sum should be calculated for each 30 days, or fraction thereof, intervening between the date of the contract and the date of breach, was intended, it is reasonable to infer, as contended by counsel for the plaintiff in its brief, to cover interest on the cost of the wheat, insurance, and elevator storage charges, pending the manufacture of the wheat into flour. Apparently, sub. (b), that is, 2 cents per bushel, was merely a reasonable, bona fide estimate of certain inevitable expenses plain-

tiff would be put to in carrying the wheat if the defendant failed to carry out its contract to take the flour. As urged by counsel for the plaintiff, it would certainly be unreasonable to assume that the plaintiff would have sold the flour at any price which did not include those necessary items of expense and disbursement entering into the cost of the production of the flour. Further, stipulating that those costs should be put at 2 cents per bushel obviated the difficulty of proving that expense, as it pertained to a particular transaction concerning which the agreement was made, proof that would be in detail practically impossible.

Third. Sub. (9c), which gives the plaintiff the amount of the decline from the highest closing price per bushel of No. 1 Northern Spring Wheat between the date of the contract and the date of breach, was an entirely reasonable provision, especially as the contract provided that if there was a rise in the price of the wheat instead of a decline, the defendant was to be credited with the amount of the rise as against items (a) and (b). For aught the contracting parties knew at the time the contract was made, there might have been, at the time of breach, a rise in the price of wheat sufficient to wipe out items (a) and (b), and leave the plaintiff without any recovery but nominal damages. It certainly was fair and just for the parties to provide that if there was a decline in the price of wheat between the two dates, the plaintiff should recover the amount of the decline, and if there was a rise instead of a decline that the defendant should receive credit to that extent.

We know of no law which would prevent the parties from agreeing, in effect, that the flour need not be manufactured if the defendant did not furnish shipping directions, and that in such case, the damages to the plaintiff should be estimated upon the raw material instead of upon the flour which had not been manufactured. Under the contract in question, it could not reasonably be claimed that if the defendant did not

16     APPELLATE COURTS OF ILLINOIS.

Christian Mills v. Berthold Stern Flour Co., 247 Ill. App. 1.

furnish shipping directions, the plaintiff must manufacture the wheat into flour, and then liquidate its loss by reselling the flour and charging the defendant with the difference between the price the defendant agreed to pay and the price received on the resale. Apparently, for good reasons, it is the custom to defer the manufacture of the flour, under such contracts, until the flour is called for by the buyer.

Further, sub. (c) provides for the taking of the highest closing price of wheat at Minneapolis to determine the decline or rise in price, at the date of the contract and the date of breach. That was entirely reasonable and just, and was intended, fairly, to measure the decline or rise in the price of wheat between the date of the contract and the date of breach. That standard of measurement, evidently, was reasonable, as it might be exceedingly difficult, perhaps impossible, to measure the damages by the difference between the actual cost of the wheat and the actual amount received for it upon resale. To prove the latter, it would be necessary to segregate one particular sale of flour from all the rest of the business, and determine exactly what the wheat bought against that sale cost. This provision seems to be fair and reasonable, and as accurate a way of measuring the actual loss or gain as could be devised. The kind of wheat specified in sub. (c), the price of which is to be taken as No. 1 Northern Spring Wheat, seems to have been selected not because all or any of the flour in question would have been manufactured from that particular grade of wheat, but in order to avoid dispute and argument as to what grade or grades of wheat should be considered in determining the rise or fall in price. We see nothing harsh or unreasonable or unjust in that provision.

Further, sub. (c) also provides that if the buyer has paid any carrying charges, he shall receive credit therefor as against items (a), (b) and (c), in order to avoid—what otherwise might be claimed—the payment of carrying charges twice.

All in all, it would seem that the standards the parties undertook to establish for the measurement of damages were not only scientifically conceived, but, as a matter of business were entirely fair, reasonable and just. We are unable to discover that any of the provisions is in any way "harsh or unfair in its operation." We know of no reason, therefore, which would justify the law in excusing the defendant from the performance of any of the conditions or provisions agreed upon for the measurement of plaintiff's damages.

The parties undertook *in limine* to value the injury, and, apparently, because it would not be readily calculable afterwards; and if what they did was reasonable—and we find it was—it would make no legal difference even if it turned out afterwards that by the rule agreed upon, the amount would exceed the actual damage, as the reasonableness of the rule must be considered as of the date of the contract.

In *Dunlop Pneumatic Tyre Co., Ltd. v. New Garage & Motor Co., Ltd.,* The Law Reports, Appeal Cases (1915) 79, 86, the court intimated that whether the amount provided for was a penalty or liquidated damages was "a question of construction to be decided upon the terms and inherent circumstances of each particular contract, judged of as at the time of the making of the contract, not as at the time of breach." The modern tendency of the courts seems to be to consider reasonableness as the final test—*United States v. Bethlehem Steel Co.,* 205 U. S. 105—and that as of the time of the making of the contract, and not as of the time of the breach.

It is provided in the Uniform Sales Act, section 71, Part VI, of chapter 121a, entitled, "Interpretation" (Cahill's St. 1925, ch. 121a, ¶ 74), as follows: "Where any right, duty or liability would arise under a contract to sell or a sale by implication of law, it may be negatived or varied by express agreement." Under that provision, which is declaratory of the common law, the parties here were entitled to contract in a

reasonable way, as to how the plaintiff's damages should be measured.

In *Sheffield-King Milling Co. v. Domestic Science Baking Co.,* 95 Ohio St. 180, the Supreme Court of Ohio, passing upon a situation similar to the one in the instant case, said:

"We think that a consideration of the whole instrument forces the conclusion that the contract did not provide for, and the parties did not contemplate, a direct sale of the flour as an ordinary commodity, as it might have done if the parties had so desired; but it provided for, and they contemplated, the purchase of the wheat at once and the future manufacture and delivery by the plaintiff of the amount of flour within the period covered by the terms of the contract. With these steps in contemplation the parties contracted that defendant should reimburse plaintiff for any loss on account of the purchase of the wheat in case defendant refused to take the flour, or 'fails to furnish directions for shipment.' The parties in this case were fully competent to contract. Each was fully able to consider and provide for his own interest. It is not claimed that there was any fraud or circumvention in connection with the negotiation, and we can conceive of no injustice or inequity in the enforcement of the terms of a contract thus made, which contemplated the purchase by the seller of sufficient wheat to supply the commodity to be manufactured and delivered thereafter during a period of a number of months. The parties agreed that wheat, the thing from which the flour was to be made, should be the basis upon which to calculate damages. They could, of course, have agreed that the flour should be such basis, but they did not do so. That was a matter for them to agree about. They did not fix an arbitrary lump sum which might turn out to be wholly inequitable, but fixed a method, the chief element of which was the price of wheat from which the flour was to be made, a matter not within the control of either."

In *Sheffield-King Milling Co. v. Jacobs,* 170 Wis. 389, which involved a contract similar to the one here in question, the court said: "Stipulations of parties, therefore, which establish a plain, simple rule of damages, having a just and fair relation to the subject matter of the contract, in cases where the ascertainment of actual damages is difficult, ought, in the public interest, to be given legal effect." *United States v. Bethlehem Steel Co.,* 205 U. S. 105; *New Prague Flouring Mill Co. v. Hewett Grain & Provision Co. of Escanaba,* 226 Mich. 35; *Yerxa, Andrews & Thurston v. Randazzo Macaroni Mfg. Co.,* 327 Mo. 238.

In the *Yerxa* case, which, also, involved a contract similar to the one here in question, the court said:

"The parties having contemplated, as indicated by the language of their contract, that the flour was to be subsequently manufactured, and it appearing that, in order to manufacture and deliver the flour at future dates to be determined by defendant's shipping directions, plaintiff must necessarily purchase the basic wheat from which to make the flour, the price of which wheat might rise or fall from day to day during the life of the contract, it would seem to follow that the parties had the unquestionable right to agree upon some reasonable method of determining their respective damages in event of a subsequent breach of the contract by either party. This they have done by paragraph 4 (which measures buyer's damages) and by paragraph 5 (which measures seller's damages), respectively, of their contract."

From the foregoing it will be seen that the highest courts of Ohio, Wisconsin, Missouri and Michigan have held similar contract provisions to be valid and binding. *Sun Printing & Publishing Ass'n v. Moore,* 183 U. S. 642, 659.

Apparently, the rule agreed upon in the contract was made under subsections 2 and 4 of the Uniform Sales Act, Cahill's St. ch. 121a, ¶ 4 et seq. and not under subsection 3. The parties provided that a failure on the

part of the defendant to furnish shipping directions would relieve the plaintiff from the obligation to make the flour and permit it to measure its loss chiefly by that upon the raw material. *George J. Cooke Co. v. Hell,* 175 Ill. App. 532; *H. W. Faulkner & Co. v. Centralia Bottling Works,* 234 Ill. App. 9, 14.

The subject of liquidated damages is well considered in the *Sun Printing & Publishing Ass'n* case, supra; in *Peine v. Weber,* 47 Ill. 41, 47, and in *Weiss v. United States Fidelity & Guaranty Co.,* 300 Ill. 11. In the latter case, Mr. Justice Duncan said:

"The burden of proof in such case is on the defendant to show that the contract provided for a penalty and not for liquidated damages, where there is nothing upon the face of the contract that requires the court to make the legal finding that the provision is for a penalty. Such a contract is *prima facie* evidence that the parties have stipulated and agreed on the actual amount of damages that ought to be recovered for a breach, and in the absence of evidence to the contrary the damages will be held to be liquidated damages. *Selby v. Matson,* 137 Iowa, 97; *Harper v. Tidholm,* 155 Ill. 370."

In *Advance Amusement Co. v. Franke,* 268 Ill. 579, Mr. Justice Carter said:

"First, where by the terms of a contract a greater sum of money is to be paid upon default in the payment of a lesser sum at a given time, the provision for the payment of the greater sum will be held a penalty; second, where by the terms of a contract the damages are not difficult of ascertainment according to the terms of the contract and the stipulated damages are unconscionable, the stipulated damages will be regarded as a penalty; third, within these two rules parties may agree upon any sum as compensation for a breach of contract."

Defendant cites with emphasis *Marshall Mill. Co. v. Rosenbluth,* 231 Ill. App. 325. In that case, however, although the contract was similar to the one here, the

evidence disclosed a different state of facts existed at the time the contract was actually made. There the seller had already manufactured the flour and six months before the contract was made had shipped it to Chicago. In that situation, of course, the seller had no right to treat the flour as unshipped and calculate its damages on the wheat. The seller should have treated it as flour, which it was, that had been shipped, and asked to have applied the provisions of the contract relating to flour that had been shipped. In the instant case as the flour was never manufactured, a different provision of the contract is apt.

Our attention is called, also, to the case of *Russell Miller Mill. Co. v. Bastasch,* 70 Ore. 475, which seems to be *contra;* but the statement of facts is not full enough to justify any definite inference. The cases *Radloff v. Haase,* 196 Ill. 365; *Westfall v. Albert,* 212 Ill. 68; *Parker-Washington Co. v. City of Chicago,* 267 Ill. 136; *Advance Amusement Co. v. Franke,* 268 Ill. 579, are not in point.

We know of no law that so circumscribes the freedom of contract guaranteed to all, by the constitution, which justifies this court in declaring invalid the terms of the contract which the plaintiff and the defendant agreed upon for the measurement of the plaintiff's damages. *Sun Printing & Publishing Ass'n v. Moore, supra,* p. 674.

It is contended for the defendant that the contract was "unenforceable because it lacked mutuality of either obligation or performance." No such claim was made at the trial, and if made, should not have been allowed. The contract contained mutual obligations. It provided that the defendant should furnish the plaintiff with shipping directions and that the plaintiff upon receiving them should manufacture and ship the flour as directed by the defendant. It, also, provided not only the plaintiff's measure of recovery—one rule as to flour shipped and refused, and another as to flour concerning which no directions were given—but it pro-

vided a rule as to the defendant's recovery. In the *Yerxa* case, *supra,* the court said:

"Defendant insists that there must be mutuality both as to the obligation and the remedy. Conceding the truth of that premise, it does not follow therefrom that the contract must afford the same remedy to each of the respective parties. In 13 C. J. 333, the rule is stated: 'Mutuality does not require that the parties have the same remedies against each other.' In *Meola Elevator Company v. Kruckman,* 185 Iowa, 1254, loc. cit. 1258, 171 N. W. 743, 744, wherein it was claimed that a contract for delivery of corn was void for want of mutuality, that court said:

"'Contracts are not deprived of mutuality simply because one party thereto is granted privileges not given to the other. Their obligations need not be equal. The contract in question contained mutual promises and imposed mutual obligations, and is not, therefore, without consideration, or void for want of mutuality.'"

Instead of lacking mutuality, it was replete with it. It was a well-balanced equation and with fairly equal and commensurate obligations, and with fair and reasonably equivalent means for recovery in case of any default.

It is contended for the defendant that it was not guilty of a breach of the contract; that the defendant at all times offered to pay the carrying charges. But the evidence shows that the plaintiff did not receive any offer from the defendant to pay the carrying charges on or before May 1, 1925. This contention is obviously untenable.

For the reasons set forth above, we are of the opinion that the trial judge erred in refusing the proffered evidence and in instructing the jury to find the issues for the defendant. The judgment, therefore, will be reversed and the cause remanded for a new trial.

*Reversed and remanded.*

HOLDOM and WILSON, JJ., concur.