**ALEX J. MANDL, Inc. v. SAN ROMAN et al.**

No. 9572.

United States Court of Appeals
Seventh Circuit.

Nov. 4, 1948.

Rehearing Denied Dec. 13, 1948.

Nat M. Kahn and Max C. Liss, both of Chicago, Ill., for appellant.

Ben W. Heineman and Joseph D. Block, both of Chicago, Ill. (Swiren Heineman & Antonow, of Chicago, Ill., of counsel), for appellees.

Before MAJOR and MINTON, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Plaintiff's suit to recover damages from defendants, incurred, as it claims, because of defendants' breach of implied warranty to deliver merchantable goods, after trial by the court without a jury, resulted in a judgment in its favor for $9708.18 and costs. Upon appeal defendants assign various errors but, in view of our conclusion, we think it unnecessary to notice any other than the one alleging an erroneous finding by the District Court that defendants did not stipulate as a part of the contract of sale that they would not be bound by any implied warranty as to merchantability of the goods bought.

For all practical purposes, the facts are undisputed. Defendants, doing business as International Industries, were importers of goods manufactured in other countries. They manufactured no liquor but dealt in such product by making sales of liquor manufactured abroad and shipped direct to defendants' purchasers. Alcoholic beverages being scarce in the United States, in March, 1944, defendants, through their agent, Todes, called on Eiseman, general manager of plaintiff, in Baltimore. The two discussed the purchase by plaintiff and the sale by defendants of Tequila to be imported from Mexico. In the course of their conversation, Todes told Eiseman that defendants were not in the beverage business, did not know anything about liquor and would not be responsible "for any of the shipments of merchandise or kind of merchandise that came in"; that the merchandise would be shipped from Mexico, and that defendants had no im-porter's license. Following this, objecting in no manner to this stipulation by Todes and requiring no further provision of warranty, Eiseman agreed to buy 750 cases of Mariachi Tequila, 100 proof, c.i.f. Laredo, Texas, at $10.50 per case "subject to acceptance and confirmation by the shipper." Following the issuance of a letter of credit in Baltimore, later assigned to the First National Bank of Chicago, which, in turn, issued a new letter of credit, payment was made from the funds provided by the letter of credit and the merchandise shipped to plaintiff. Upon its arrival in the United States in July, 1944, the United States Food and Drug Administration found the merchandise adulterated or deleterious in that dangerous quantities of chips of glass were present in the bottles. It was because of this condition that plaintiff brought suit for breach of implied warranty of merchantability.

It is apparent that a decisive question is presented by the contentions of the respective parties as to whether any implied warranty as to merchantability can be enforced against the defendants in view of the terms and conditions of the contract of sale to which we have referred. Defendants' agent advised plaintiff that defendants were not manufacturers and would not be responsible for any of the shipments of merchandise or the kind of merchandise. The testimony in this respect is uncontroverted. Eiseman made no response to the statement and thereafter gave the order for the merchandise. Plaintiff's failure to object to the stipulation that defendants would not be responsible for the kind of merchandise shipped, then, must be read into the contract, for plaintiff does not contend that it made known to defendants in any way any objection to such a stipulation. The parties having acted after the condition had been insisted upon by defendants, each of them was bound thereby.

It follows that whether there was an effective refusal upon the part of defendants to make any warranty depends wholly upon the interpretation of the language used. The trial court thought that it did not amount to a refusal to warrant the merchantability or quality of the liquor

but concluded that it negatived only an intent to guarantee the "grade or type of merchandise." If the court erred in such a holding, then the judgment must be reversed.

█ Under the Uniform Sales Act, which is in force in Illinois, it is provided by Section 71, Ill.R.S.1947, c. 121½, § 71, that "where any right, duty or liability would arise under a contract to sell or a sale by implication of law, it may be negatived or varied by express agreement or by the course of dealing between the parties, or by custom, if the custom be such as to bind both parties to the contract or the sale." This is merely declaratory of the common law. Christian Mills v. Berthold, Stern Flour Co., 247 Ill.App. 1. The Supreme Court of Illinois in Sterling-Midland Coal Co. v. Great Lakes Coal & Coke Co., 334 Ill. 281, at page 290, 165 N.E. 793, 797, held that where the parties have by express terms negatived implied warranties, the purchaser "cannot claim the benefit of any such as might have been available had the contract not done so." See also Heller v. Franklin-Butler Motors, Inc., 259 Ill.App. 358. According to Williston a complete negation of a warranty occurs when there exist, "any words or conduct tending to show that such was the intention of the parties." Williston on Sales (2d Ed.) Section 239. "Any words or conduct tending to show that this was the intention of the parties will prevent a warranty from being implied." Tamkin v. Nelson-Dowling Coal Co., 82 N.H. 96, 130 A. 26, 27. See also Burntisland Shipbuilding Co. v. Barde Steel Products Corp., D.C., 278 F. 552; Bridgeport L. A. W. Corp v. Levy, 110 Conn. 255, 147 A. 841; Gilcrest Lumber Co. v. Wilson, 84 Neb. 583, 121 N.W. 989; Fruit Dispatch Co. v. C. C. Taft Co., 197 Iowa 409, 197 N.W. 302. In Buckley v. Shell Chemical Co., 32 Cal.App.2d 209, 89 P.2d 453, 454, the court held that the provision that the vendor "shall not be held responsible for productiveness and, or, quality" of its crop completely negatived any warranty. The words "shall not be responsible" are those of the stipulation of the parties in the present case.

█ Eiseman and Todes were laymen. They lacked any learning as lawyers or as members of any profession. Hence the meaning of the words used by Todes and unobjected to by Eiseman, it would seem, should be tested by their connotation to the minds of ordinarily reasonably minded laymen. According to Webster, the word "kind," when referring to merchandise, generally means the generic or specific quality or character of the article under consideration. Funk & Wagnall define it as indicating the nature or constitution of a person or thing, whether generic or specific, meaning its essential or distinguishing quality, such as "what kind of a man is he?" In City of St. Louis v. James Braudis Coal Co., Mo.App., 137 S.W.2d 668 the court held that the words "kind of coal", meant "class, grade, or sort." In United States v. One Hundred Thirty Two Packages of Spirituous Liquors, D.C., 65 F. 980, 982, the words "kind and quality" were said to distinguish Cognac from imitation Cognac. The words "kind and quality" relate to quality and suitableness or fitness for the purpose intended. Maryland Motor Car Insurance Company v. Smith, Tex.Civ.App., 254 S.W. 526. Remembering that defendants were not manufacturers of this liquor, that they were taking orders for a product to be filled by a producer in a foreign country, that plaintiff was eager to procure foreign liquor because of the stringent domestic market, it seems clear that the phrase, "kind of merchandise," within the contemplation of the parties, meant the character or quality of the merchandise. The parties knew the kind of liquor, in the sense of distinguishing distilled from vinous liquor, covered by their agreement, but neither of them had seen, tested or knew the quality of liquor which would be shipped, whether it would be good or bad in the sense of merchantability, whether it would be adulterated or deleterious or whether it would be fit for use. The language used negatived upon the part of the defendants any intent to be responsible for any of these qualities. They expressly refused to warrant that the liquor received was good, bad, merchantable or fit for its purposes.

They stipulated that they should be under no liability and refused to be responsible in any way for or to guarantee any quality of the merchandise. This, we think, is the legal purport of the language used. Consequently the court erred as a matter of law in holding that defendants had broken an implied warranty.

Accordingly the judgment is reversed with directions to proceed in accord with the announcements herein.