[Civ. No. 1347. Second Appellate District.—July 7, 1913.]

J. A. WALTON, Respondent, v. R. W. DAVIS, Appellant.

AGENCY—SUIT BY UNDISCLOSED PRINCIPAL—WHEN NOT MAINTAINABLE. A contract between a creamery company and a person who formerly has operated a "cream route," whereby he agrees, for a stipulated monthly salary, to deliver to the creamery all the cream that he can secure within a certain district, calls for the performance of personal services, rather than the sale of a commodity, and his undisclosed principal cannot sue thereon.

ID.—RECORDED POWER OF ATTORNEY—WHEN NOT NOTICE OF AGENCY.— The fact that the undisclosed principal had recorded a power of attorney which gave the cream hauler the right to make contracts as manager of his ranch, did not charge the creamery company with notice that the cream hauler, in contracting with it, acted as agent of the owner of the ranch.

APPEAL from a judgment of the Superior Court of Imperial County and from an order refusing a new trial. Franklin J. Cole, Judge.

The facts are stated in the opinion of the court.

Conkling & Brown, for Appellant.

Dan V. Noland, for Respondent.

JAMES, J.—Appeal from a judgment entered in favor of plaintiff, and from an order denying defendant's motion for a new trial.

The following contract was entered into at the date set out therein between defendant Davis, who was doing business under the name of the Imperial Creamery Co., and T. A. Cox:

"An Agreement for the Hauling of Cream, figured as Butter Fat.

"This agreement entered into this the 17th day of December, 1909, between the Imperial Creamery Co., hereinafter known as the party of the first part, and T. A. Cox, hereinafter known as the party of the second part.

"Witnesseth: That the party of the second part does hereby agree to lay down at the plant of the Imperial Creamery Co., located at Imperial, California, all of the cream, in good condition, that it is possible for him to secure within the portions of the Imperial Valley, known as Water Districts No. 7 and No. 5, with the exception of what is known as the R. C. George Route, for the considerations hereinafter specified:

"The party of the first part does hereby agree that, providing the party of the second part fulfills all of the conditions of this contract, they will pay Seven Hundred ($700.00) Dollars per month to the party of the second part providing that he does deliver to the said plant daily not less than Two Hundred and Seventy-five (275) pounds of Butter Fat, nor more Three Hundred (300) pounds, and it is further agreed that the party of the first part will pay to the party of the second part the sum of Eight Hundred ($800.00) Dollars per month, providing the party of the second part deliver at the said plant daily not less than Three Hundred (300) pounds, nor more than Six Hundred (600) pounds of Butter Fat, and further, the party of the first part does hereby agree to pay to the party of the second part the sum of four cents per pound on Butter Fat delivered at said plant, providing the daily quantity delivered amounts to not less than Six Hundred

(600) pounds, nor more than Eight Hundred (800) pounds, and it is further agreed that the party of the first part will pay to the party of the second part the sum of three and one-half cents per pound on Butter Fat delivered at the said plant providing the daily quantity delivered amounts to over Eight Hundred (800) pounds per day.

"It is also further agreed that, if the quantity of Butter Fat delivered at the aforementioned plant daily does not amount to Two Hundred and Seventy-five (275) pounds, this contract will be considered not operative and the aforementioned parties will meet and form some other agreement in place of this.

"It is further agreed that the percentage of Butter Fat in the cream hauled by the party of the second part will be determined by him at his expense and at such a place as he may desire, and that the payments herein specified will be in accordance with this percentage. And it is further agreed that if there be such a difference between the percentage test of the party of the second part and that of the party of the first part as to cause loss to the party of the first part, then the parties will meet and adjust same satisfactory to both, this adjustment if desired to bear upon this contract.

"This agreement to take effect on and to continue one year from the first day of January, 1910.

"It is further specified that one only of the above agreements to pay will be operative at any one time.

"(Signed) IMPERIAL CREAMERY CO.,
"By H. F. Davis.
"(Signed) T. A. Cox."

Plaintiff in his complaint alleged that the foregoing contract was a contract for services to be rendered to defendant, but that Cox in making said contract acted as the agent of plaintiff. Defendant in his answer denied that he had contracted at all with the plaintiff, but admitted that he had contracted with Cox in the form set out in the complaint. The evidence showed that Cox had proceeded under the contract to haul cream for defendant, but at the end of the second month a notice was given by defendant to Cox informing the latter that his services would not be longer required. No deliveries of cream were thereafter made to defendant by Cox under this contract. The cause of difference which led to the ter-

mination of Cox's employment arose from the fact that it was claimed by defendant that the cream tests made under Cox's direction were not accurate. Plaintiff claimed a large amount of damages due to the alleged improper act of defendant in preventing further performance to be made under the contract, and the verdict of the jury was in plaintiff's favor for the sum of three thousand dollars. The court left it to the jury to determine whether the contract was one which contemplated personal services to be rendered by Cox, in which event the jury were instructed that plaintiff as an undisclosed principal could not recover, and various instructions were given touching the matter of the measure of damage which was to be applied. These instructions might well have led to some confusion in the mind of the jury as to what damages were proper to be assessed, but the questions presented as to the correctness of the court's charge in that regard need not be further considered, because the verdict of the jury cannot be sustained for another reason which affects the basis of the alleged cause of action. Plaintiff on his own account alleged that the contract as made contemplated the rendering of services, rather than the sale of a commodity, and much testimony was introduced and received without objection which went to show that the intention of the defendant was when he made the contract that he should receive the personal services of Cox in the performance of the obligations thereof; and further it was not shown by any evidence that defendant was informed that plaintiff had any interest in the remuneration to be paid to Cox under the contract at the time the same was entered into. Cox had, prior to the time that he entered into the contract, operated a "cream route," and it was for the purpose of engaging his services as such operator that the contract was made with him by defendant. If it was the intention of the parties that defendant should have the benefit of the personal services of Cox, then the contract became non-assignable during the time that it might remain unexecuted, and there could be in that event no undisclosed principal holding any right of action as against defendant. (Page on Contracts, vol. 3, sec. 1262; Bishop on Contracts, 2d ed., par. 1182.) In the case of *Kelly* v. *Thuey,* 102 Mo. 522, [15 S. W. 62], it is said: "This broad doctrine, that when an agent makes a contract in his own name only, the known or unknown

principal may sue or be sued thereon, may be applied in many cases with safety, and especially in cases of informal commercial contracts. But it is certain that it cannot be applied where exclusive credit is given to the agent, and it is intended by both parties that no resort shall be had by or against the principal. (Story on Agency, sec. 160a.) Nor does it apply to those cases where skill, solvency, or any personal quality of one of the parties to the contract is a material ingredient in it. (Fry on Specific Performance, sec. 149.)'' The evidence presented no conflict as to it having been the intent and purpose of the defendant to engage the personal services, knowledge, and skill of Cox rather than of Walton, who was a complete stranger to the contract. It appeared that Cox had been employed as a manager of a ranch of Walton and that he used Walton's teams for the purpose of gathering and hauling cream; also that Walton paid him a salary as such manager. On behalf of plaintiff a power of attorney which gave to Cox the right to make contracts on Walton's behalf, as recorded in the office of the county recorder of Imperial County, was introduced in evidence, which power of attorney recited that Cox had authority ''to buy and sell live stock, farm implements, hay, grain, or any other thing required in the course of his duties as manager of my ranch, . . ..'' The recording of this power of attorney most certainly did not charge the defendant with notice that when Cox contracted to act as cream hauler for him he did so as the agent of Walton. Cox might well have been the manager of Walton's Ranch, and yet have been permitted to perform the work of cream hauler in his personal capacity and in his own interest, for it was clearly shown that the cream as hauled was not cream gathered from the Walton Ranch alone, but from various dairymen whose supply of cream made up ''the route'' covered by Cox. Under this state of the proof, the court as a matter of law might have instructed the jury to find for the defendant for the reason that the contract being of a nature that contemplated the rendering of personal services, the plaintiff as an undisclosed principal possessed no rights to enforce the same or recover damages for any alleged breach of the obligations thereof. Cox no doubt possessed the right to assign any earnings which he might have made under the contract, or to have assigned his cause of action for damages.

But this he did not do.   The evidence was insufficient as affecting the particular issue discussed to support the verdict.

The judgment and order are reversed.

Allen, P. J., and Shaw, J., concurred.