[L. A. No. 3802.    Department Two.—October 11, 1916.]

NELLIE M. SCHADER, Appellant, v. A. STANLEY WHITE, Respondent; A. STANLEY WHITE, Cross-plaintiff and Respondent, v. CARL F. SCHADER et al., Cross-defendants and Appellants.

VENDOR AND VENDEE—CONTRACT IN NAME OF AGENT—RATIFICATION—EXECUTION OF ESCROW DEED BY PRINCIPAL.—An executory contract for the sale and exchange of land, entered into by an attorney in fact in his own name, is accepted and ratified by the principal, having full knowledge of the transaction, by executing a deed and depositing it in escrow in pursuance of the contract.

ID.—SPECIFIC PERFORMANCE—UNDISCLOSED PRINCIPAL.—Such an undisclosed principal could either sue or be sued in an action to specifically enforce the executory contract of sale.

ID.—ADEQUACY OF CONSIDERATION—EQUALITY OF PRICE—EXCHANGE.—Adequacy of price, as a condition to the right to a specific performance of a contract for the sale and exchange of land, does not mean equality of price, and an adequate consideration does not mean a consideration measuring to the fullest extent up to the value of the property. Each case must rest for determination upon its own facts, and equity will find adequacy or inadequacy after considering all of the circumstances appearing in each particular case.

ID.—SLIGHT DISPARITY IN VALUE OF PROPERTIES AGREED TO BE EXCHANGED.—In this action to specifically enforce a contract for the exchange of property of the value of twenty thousand dollars, a disparity of one thousand dollars in the value of the respective properties does not, under the circumstances of the case, amount to inadequacy of consideration justifying a refusal of specific performance.

ID.—EVIDENCE—FRAUDULENT MISREPRESENTATIONS AS TO VALUE.—The evidence in this case fails to show any fraudulent misrepresentations concerning the value of the property which was agreed to be taken in part exchange for the property in question.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order refusing a new trial. N. A. Hawkins, Judge.

The facts are stated in the opinion of the court.

Tanner, Odell, Odell & Taft, for Appellant.

Oscar C. Mueller, Hartley Shaw, and Frank Stewart, for Respondent.

HENSHAW, J.—Plaintiff brought her action in ejectment, charging in two counts. In the first she averred ownership of property consisting of land and a dwelling-house thereon in the city of Santa Monica, which property, for convenience, will be spoken of as the Santa Monica property, and alleged an ouster by defendant on December 3, 1911. By her second count she fixed the time of the ouster as June 8, 1912. In both her damage is declared to be thirty thousand dollars and the rental value five hundred dollars per month. Defendant answered by denial and by cross-complaint. In his pleadings he set up in different forms and counts the following facts: That he, defendant, had entered into a written agreement with Carl F. Schader, husband of plaintiff, for the sale and exchange of property in Seattle belonging to himself, for the Santa Monica property. The terms of this sale or exchange were the payment by defendant to plaintiff of a certain sum of money, the assumption by each party of the mortgage existing upon the property of the other, and the transfer of a good and sufficient title respectively upon these terms. He alleged that the necessary papers for the consummation of this transaction were placed in escrow, he, the defendant, being given a reasonable time within which to present a certificate of title showing good title in himself to the Seattle property; that his agreement called upon him to pay in cash to Carl F. Schader four thousand five hundred dollars, which he did, Carl F. Schader and wife then depositing in escrow their deed of grant to the Santa Monica property, awaiting a like deed from defendant of his Seattle property. Owing to the failure of the title company of Seattle to send a sufficient certificate of title some little delay followed before defendant was able to secure this certificate and make his deed.

But this delay was fully concurred in and assented to by the
Schaders. On the twenty-seventh day of December, 1911, he
delivered to the Ocean Park Bank, the escrowee, a warranty
deed of himself and wife to the Seattle property, in which
deed plaintiff Nellie M. Schader was named as grantee. On
the twentieth day of March, 1912, the Schaders, without au-
thority or right, withdrew from the Ocean Park Bank their
deed and certificate of title which they had previously placed
there. The prices upon which the properties were to be ex-
changed were fair and adequate and the agreement equitable
and just. Demand had been made upon the Schaders to
perform their contract but they had refused to do so. Such
in substance are the allegations of the cross-complaint. In
the first count it is charged that the contract was executed
by Carl F. Schader under written authority previously con-
ferred upon him and that the agreement, although executed
in the name of Schader, was intended and understood to be
the agreement of Mrs. Schader, the owner of the property.
The second count charges upon a parol contract with Mrs.
Schader and a sufficient execution thereof to lift the ban of
the statute of frauds. The third count alleged ownership of
the property to be in the husband and the property to be
community property. The defendant had the unquestioned
right thus to plead in separate counts, and the explanation
that these pleadings were thus framed so as to meet any
elusive defense which the Schaders might interpose is quite
reasonable. The Schaders answered separately. Carl Schader
denied that he entered into the contract as the agent of his
wife, averred mutual mistake and error in a minor term of
the contract, and asked the court to reform it in that par-
ticular, this minor term going merely to the payment of the
taxes for the current year. He then set up an oral contract
between himself and his wife by which he was to pay her
twenty-five thousand dollars for the property. He admits
the receipt of the money, does not offer to restore it, and de-
clares his election to rescind because of false and fraudulent
representations made to him concerning the Seattle property.
He asserts a great difference in the value of the two proper-
ties and that the contract is therefore inequitable. Finally
he declares that the ownership of the property is in Mrs.
Schader, that she refuses to make the conveyance to the cross-
complainant, and that he is unable to do so, and that he has

become obliged to pay her for the use of her premises. Mrs. Schader's answer is to the same effect, asserting ownership in herself, denying all participation in the contract, and charging fraud. The court in equity decreed specific performance in favor of the defendant and this appeal has followed.

To fill out the skeleton of the facts above given, it was shown by the evidence that the negotiations were conducted between Stanley White and Carl Schader; the executory contract was signed by Carl Schader and not by Nellie Schader, and the four thousand five hundred dollars paid to and received by Carl Schader. Before the money was paid, however, and the contract executed negotiations were had in the presence of Mrs. Schader. White visited the house. There were discussions over the price, over what personal property within the house should go to the purchaser, and, finally, when these matters were agreed to and embraced in the executory contract, Mrs. Schader joined with her husband in executing the deed, which they placed in escrow with the certificate of title to their Santa Monica property.

Appellants first contend that Carl F. Schader was not the agent of his wife. A very full power of attorney by the wife, authorizing the husband to act for her, had been executed and recorded and was introduced in evidence. Appellants' objection to the force of this power of attorney is that it is "an ancient document which everybody had forgotten." Of course there is no legal substantiality to such an attack. But it may be added that it was not utterly forgotten; that Mrs. Schader testifies that her husband was wont to deal in her real estate; that Mr. White was unaccustomed to these transactions, and that when he suggested to Mr. Schader that Mrs. Schader sign the executory contract and said, "You promised your wife should sign," Schader replied, "My signature is good all right. I would not render myself liable. In fact, I have a power of attorney from Mrs. Schader." This was upon the occasion of the payment of the four thousand five hundred dollars. Another objection to the power of attorney is that it was not shown to have been delivered. It was shown, however, to have been recorded at the request of Mr. Tanner, one of appellants' counsel in the case, and no effort was made to deny his authority so to have it recorded. Finally, it is objected that the power of attorney authorizes the agent to execute contracts and deeds in the name of the principal, and

that this executory contract was executed by Carl Schader in his own name. But following the executory contract was the formal execution of the deed itself made by Mrs. Schader. There is and can be no question of her full and complete knowledge of the transaction at the time she so executed, and her deed is itself an acceptance and ratification of the executory contract. (*Salmon* v. *Hoffman,* 2 Cal. 139, [56 Am. Dec. 322]; *Love* v. *Sierra Nevada etc. Co.,* 32 Cal. 639, [91 Am. Dec. 602]; *Cannon* v. *Handley,* 72 Cal. 133, [13 Pac. 315]; *Puget Sound Lumber Co.* v. *Krug,* 89 Cal. 237, [26 Pac. 902]; *Ralphs* v. *Hensler,* 97 Cal. 302, [32 Pac. 243]; *Bertholdt* v. *Porter Bros. Co.,* 114 Cal. 681, 689, [46 Pac. 738]; *Southern Pac. Ry. Co.* v. *Von Schmidt Co.,* 118 Cal. 371, [50 Pac. 650].)

Appellants' second objection is that of lack of mutuality in the contract, herein arguing that because Mrs. Schader had not herself signed the executory contract she could not have compelled specific performance, and therefore it was inequitable to decree specific performance against her. But it is sufficient, in addition to what has been said herein, to add that as an undisclosed principal she could sue or be sued. (*Eldridge* v. *Mowry,* 24 Cal. App. 183, [140 Pac. 978]; *Walton* v. *Davis,* 22 Cal. App. 456, [134 Pac. 795]; *Ford* v. *Williams,* 62 U. S. (21 How.) 287, [16 L. Ed. 36]; Pomeroy on Specific Performance, 2d ed., sec. 89; 31 Cyc. 1416.)

The third and fourth propositions advanced by appellants may be considered together. They are that the respondent misrepresented the value of his property and that the Schaders were not, therefore, to receive an adequate consideration for their own property. Touching the adequacy of consideration, the court found the value of the Santa Monica property to be twenty thousand dollars, upon which was a mortgage of seven thousand five hundred dollars, reducing its actual value to the purchaser assuming the mortgage to twelve thousand five hundred dollars. The value of the Seattle property was found to be fourteen thousand dollars, upon which was a mortgage of seven thousand dollars, reducing its value to seven thousand dollars. In addition, however, the defendant paid to the Schaders four thousand five hundred dollars, which would leave a disparity and difference of one thousand dollars between the values of the two properties as found

and fixed by the court. We have recently had occasion to discuss the question of adequacy of price (*O'Hara* v. *Wattson*, 172 Cal. 525, [157 Pac. 608]), and little need be added to what is there said. Adequacy of price does not mean equality of price. An adequate consideration does not mean a consideration measuring to the fullest extent up to the value of the property. Each case must rest for determination upon its own facts, and equity will find adequacy or inadequacy after considering all of the circumstances appearing in each particular case. Herein, in a transaction involving the exchange of property to the value of twenty thousand dollars the disparity is one thousand dollars. This disparity itself is found by the court only as it resolves a mass of conflicting evidence touching values. Moreover, there is the testimony of Schader that in his desire to move away from Santa Monica he would have been indifferent to even a greater discrepancy in the values of the properties. And, finally, there is the testimony, to which we will shortly advert more in detail, showing a full, complete, and independent investigation made by the Schaders themselves of the value of the Seattle property, which investigation took the form not only of letters to them from real estate agents in Seattle, but as well the form of a personal inspection of the property and oral inquiries in the city of Seattle regarding its value. In *Wilson* v. *White*, 161 Cal. 453, [119 Pac. 895], where there was found a discrepancy in value of one thousand dollars on a purchase price of fourteen thousand dollars, this court, declaring the rule to which we have adverted, the adequacy or inadequacy is to be determined by a consideration of all the circumstances, said that a mere difference of one thousand dollars on property worth fifteen thousand dollars "is perhaps not so large as to warrant a conclusion of inadequacy sufficient to justify a refusal of specific performance." The court then proceeded to show, however, that there were certain equitable circumstances justifying the court's refusal, the essential one being the duty of the vendee under the circumstances of the case to give all information to the vendor, and his concealment of that information, facts wholly wanting in the case at bar.

The contention of the Schaders that they were deceived by the fraudulent misrepresentations of defendant concerning the value of the Seattle property rests upon an even more unsubstantial foundation than the unsustained contentions

which we have just been considering. It appears that Schader had a trusted friend in Seattle by the name of Atkinson, with whom he communicated upon the subject matter. Atkinson replied, saying that the largest real estate house in Seattle said the property might be sold within sixty days for fourteen thousand dollars, "but will make no absolute assurances; market very dull, and triangular lot a little harder to sell than square ones." He followed this with a letter in which he said: "My advice to you is to let Seattle real estate alone, especially this lot, as it is a little triangle that could not be improved with a building higher than two stories." Not satisfied with this, Schader sought and obtained from independent sources other views of the value and desirability of the lot. And, finally, in February, 1912, he went to Seattle with his wife, personally inspected the property, inquired of its value, and placed the property with a real estate firm for sale. It remained with that firm for sale on account of the Schaders until July 27, 1912. Upon his return to Santa Monica he never sought a rescission upon the ground of fraud, never declared that he had been deceived during all of the time that defendant remained in possession of the Santa Monica property, until ten months afterward, when he asserts this fraud in his answer to the cross-complaint. The defendant had been put in possession of the house before the departure of the Schaders by the Schaders themselves, and Mrs. Schader, after her visit to the Seattle property, wrote to the maid that she had left at Santa Monica, expressing the hope that she "had cleaned the house to suit the gentleman," meaning the defendant White. No discussion is required upon these facts. It is sufficient to refer to *Nounnan* v. *Sutter County Land Co.*, 81 Cal. 1, [6 L. R. A. 219, 22 Pac. 515]; *Schmidt* v. *Mesmer*, 116 Cal. 270, [48 Pac. 54]; *Oppenheimer* v. *Clunie*, 142 Cal. 313, [75 Pac. 899]; *Spinks* v. *Clark*, 147 Cal. 444, [82 Pac. 45]; *Maxon-Nowlin Co.* v. *Norswing*, 166 Cal. 509, [137 Pac. 240].

That respondent White performed all the covenants and conditions of his contract is not left in doubt. He was to pay four thousand five hundred dollars, five hundred dollars at one time, four thousand dollars within a limited time thereafter. He made these payments; Schader received the money, and still retains it. He was to deliver to Schader a warranty deed to the Seattle property. He executed this deed to Mrs.

Schader, in whom title to the Santa Monica property was apparently vested, and he did this, as the evidence discloses, under the directions of her husband. He was also to deliver in escrow to the bank a certificate by a responsible guaranty company of Seattle showing a good title, free from encumbrances, saving the mortgage of seven thousand dollars. Upon the doing of these things the evidence discloses that Mr. Schader gave directions to the officials of the bank to examine and pass upon the deed executed to him. They did so examine it and found no objection to it. Thereafter Schader wrote White that "Everything [in escrow] is in due form." At the time Mr. Schader wrote this letter the deed had been in the bank for two months, and at this moment the only objection urged against the deed is that it is a conveyance to Mrs. Schader instead of to the husband, though the husband pleads that the title is in his wife and that he cannot induce her to perform the contract which he says he alone entered into. We will not unduly extend this by a discussion of the similar untenable and ultra-technical objections advanced against the sufficiency of the certificate. The evidence fully sustains respondent's position that the delay in obtaining a proper certificate of title was through no neglect of his own, and was fully known and assented to by appellants.

The judgment and order appealed from are therefore affirmed.

Melvin, J., and Lorigan, J., concurred.