[Civ. No. 2243. Fourth Appellate District.—April 17, 1939.]

JENNIE R. BUCKLEY et al., Appellants, v. SHELL CHEMICAL COMPANY (a Corporation) et al., Respondents.

Harvey, Johnston & Baker for Appellants.

Borton, Petrini & Conron and Hadsell, Sweet, Ingalls & Lamb for Respondents.

MARKS, J.—This is an appeal from a judgment rendered after defendants' motions for nonsuit on plaintiffs' first cause of action had been granted, and after a jury had returned a verdict in favor of defendants on the second cause of action. The first cause of action was based on an alleged breach of warranties and the second was for damages resulting from alleged fraud and deceit.

Plaintiffs, mother and son, are farmers with about $52\frac{1}{4}$ acres of land near Wasco, in Kern County, upon which they raise potatoes. The Shell Chemical Company is a corporation which manufactures a fertilizer known as Shell Anhydrous Ammonia, to which we will refer as Shell Ammonia. The Greening-Smith Company is a partnership engaged in the business of selling and distributing fertilizers, among which is Shell Ammonia. Paul Greening is a partner in Greening-Smith Company and a salesman for it. Elmer Anderson is the father-in-law of J. A. Buckley and on and after February 4, 1936, was salesman for Greening-Smith Company.

In the summer of 1935, Anderson read advertisements of Shell Ammonia and called the attention of J. A. Buckley to them. As Buckley was contemplating planting potatoes for a fall crop he was interested in the advertisements and Anderson contacted Greening-Smith Company which sent Paul Greening to Kern County. He went with Anderson to plaintiffs' farm where the two interviewed Buckley. Greening made a sales talk on the virtues of Shell Ammonia as a fertilizer. Among other things he told Buckley that during the year 1935, as an experiment, Shell Ammonia had been applied as a fertilizer on potatoes, for the first time, in the neighborhood of Wasco on a farm known as the Lachenmaier ranch, a few miles distant from the Buckley farm;

that a report of this experiment was being prepared. This report was delivered to Anderson in December, 1935. He read it and gave it to Buckley. Buckley admitted receiving the report. He also admitted reading one page of it, turning other pages and glancing at them but denied reading them.

About a month later Greening and Anderson again met Buckley at the Wasco farm where Buckley signed an order to Greening-Smith Company for five thousand pounds of Shell Ammonia to be applied to fifty acres of potatoes by Greening-Smith Company. ▆ The order concluded as follows:

"Because of weather hazards which affect the productiveness and, or, quality of growing crops, it is understood and agreed that Greening-Smith Company shall not be held responsible for productiveness and, or, quality of the undersigned's crops.

"Salesman E. M. ANDERSON
"Purchaser J. A. BUCKLEY"

Buckley planted the fifty acres to potatoes and they were fertilized with Shell Ammonia. He also planted an adjoining $2\frac{1}{4}$ acres to potatoes which were fertilized with Ammonium Sulphate. The land fertilized with Ammonium Sulphate produced a good normal crop of potatoes. The fifty acres fertilized with Shell Ammonia produced about one-quarter of a normal crop. The potatoes were of an inferior quality. Plaintiffs estimate their damage, solely by reason of the small crop and its poor quality, at $30,322.47.

Plaintiffs base their first cause of action on the breach of express verbal warranties alleged to have been made by Greening which they summarize in their brief as follows:

"1. That Shell Anhydrous Ammonia as applied by respondents in the amount of one hundred (100) pounds per acre during the crop season was a proven fertilizer for potatoes, was entirely out of the experimental stage, and no other fertilizer for appellants' crops was required.

"2. That Shell Anhydrous Ammonia so used and applied as aforesaid as a fertilizer for potatoes always produced a yield equal to and of better quality than that produced from use of Ammonium Sulphate.

"3. That Shell Anhydrous Ammonia would be by respondents equally distributed over appellants' potato ground and to the potato plants.

"4. That Shell Anhydrous Ammonia so used and applied, always softened the soil and thereby produced a smoother and a better marketable grade of potatoes than that produced from use of Ammonium Sulphate.

"5. That respondents were skilled and experienced in the method of applying Shell Anhydrous Ammonia to potato crops, and through their methods they promised to apply said chemical to said crop so that said 50 acres of potato land would produce a 1936 crop in yield and quality better, or at least equal to potatoes grown with Ammonium Sulphate, as theretofore applied by appellants."

Plaintiffs urge that the trial court erred in granting the motion for nonsuit to the first cause of action because the warranties made by Greening went far beyond the terms of the disclaimer of warranties which we have quoted, and because that disclaimer was expressly conditioned on unfavorable weather which did not exist during the 1936 cropping season as that season was ideal for potato raising.

The parol warranties upon which plaintiffs rely were all pointed to the production of a large crop of good quality potatoes. If those warranties had been made and had they been fully performed no other result could have been expected. In other words, the substance of those warranties is: We warrant the qualities of Shell Ammonia and that it will be applied by us with skill so that your potato crop will be equal to or better in quality and quantity than your former crops raised and fertilized with Ammonium Sulphate. Thus those warranties were simply of the quality and quantity of the potatoes to be raised. Plaintiffs' evidence of breach of them was confined to proof of lack of quality and quantity in the potato crop. The written waiver of warranties in the order was to the effect that plaintiffs could not hold Greening-Smith Company liable for failure of the productiveness (quantity) or quality of the potato crop. This is a complete disclaimer of the warranties upon which plaintiffs rely (*Larson* v. *Inland Seed Co.*, 143 Wash. 557 [255 Pac. 919, 62 A. L. R. 444]), and as it is in writing it is presumed to be a complete expression of the entire agree-

ment between the parties, unless obtained by fraud, which is not established here. (*Heffner* v. *Gross*, 179 Cal. 738 [178 Pac. 860].) Thus this disclaimer of warranties in writing must be controlling here and defendants cannot be held liable because of poor quality or lack of quantity of the crop. (*Couts* v. *Sperry Flour Co.*, 85 Cal. App. 156 [259 Pac. 108]; *Davis Co.* v. *Bertrand Seed Co.*, 94 Cal. App. 281 [271 Pac. 123].)

■ To escape the foregoing conclusions plaintiffs urge that the phrase in the disclaimer of warranties, "Because of weather hazards which affect the productiveness and, or, quality of growing crops", are words establishing a condition under which the disclaimer of warranties will only come into effect; that because there was no proved weather hazards nor unfavorable weather, there was no disclaimer of warranties. We do not so understand this phrase in the disclaimer. This phrase is not a condition limiting the disclaimer. It is merely the statement of a reason why the Greening-Smith Company refused to warrant the quality and quantity of the potato crop. It leaves the disclaimer binding on the parties to it regardless of good or bad weather conditions.

■ Plaintiffs attack the order granting the motion for nonsuit of the Shell Chemical Company because the written waiver of warranties expressly ran to the Greening-Smith Company and by its clear terms did not include the Shell Chemical Company.

Plaintiffs purchased the Shell Ammonia from the Greening-Smith Company which delivered and placed it on their land. They had no knowledge that the Shell Chemical Company was connected with the transaction until after the first application of the Shell Ammonia. They sought to hold the Shell Chemical Company as the undisclosed principal of the Greening-Smith Company which they maintain acted as its agent.

It is a general rule that an undisclosed principal may elect to take the benefits of a contract made by an agent in his own name. This rule is thus stated in 2 American Jurisprudence, 320:

"Where an agent makes a simple contract for his principal, but, contracting as if he were principal, conceals the

fact that he is an agent, the principal may at any time appear in his true character and claim all the benefits of the contract from the other contracting party, so far as he can do so without injury to that other by the substitution of himself for his agent. It has accordingly been held that any benefit or advantage derived by the agent in the nature of a warranty, either express or implied, inures to the benefit of the undisclosed principal.''

These principles prevail in California. In *Schader* v. *White*, 173 Cal. 441 [160 Pac. 557], it was said:

''Appellants' second objection is that of lack of mutuality in the contract, herein arguing that because Mrs. Schader had not herself signed the executory contract she could not have compelled specific performance, and therefore it was inequitable to decree specific performance against her. But it is sufficient, in addition to what has been said herein, to add that as an undisclosed principal she could sue or be sued. (*Eldridge* v. *Mowry*, 24 Cal. App. 183 [140 Pac. 978]; *Walton* v. *Davis*, 22 Cal. App. 456 [134 Pac. 795]; *Ford* v. *Williams*, 62 U. S. (21 How.) 287 [16 L. Ed. 36]; Pomeroy on Specific Performance, 2d ed., sec. 89; 31 Cyc. 1416.)'' To the same effect are *Dabney* v. *Edwards*, 5 Cal. (2d) 1 [53 Pac. (2d) 962, 103 A. L. R. 822]; Cowan v. Tremble, 111 Cal. App. 458 [296 Pac. 91].

It follows that as plaintiffs are attempting to impose liability on the Shell Chemical Company as the undisclosed principal of Greening-Smith Company, the former may take advantage of the disclaimer of warranties which by its terms runs in favor of the purported agent.

In support of their second cause of action for damages because of false and fraudulent representations, plaintiffs rely upon the same statements and representations alleged to have been made by Greening which form the basis of their action for breach of warranties. As we have already quoted their summary of those representations we will not repeat them here.

The evidence is in sharp conflict on the question of whether or not those representations were ever made. If in fact the great preponderance of the evidence on this question is not in favor of defendants, there is sufficient in the record to

support the implied finding that they were not made. There is also evidence to support an implied finding that the partial failure of the potato crop was due to poor farming rather than to the use of Shell Ammonia as a fertilizer. Plaintiffs tacitly admit the correctness of these conclusions by failing to argue the insufficiency of the evidence to support the verdict and judgment.

■ Plaintiffs complain of nine instructions given by the trial court on the questions of master and servant, authoritative control and independent contractor.

It is the theory of plaintiffs that the relationship of principal and agent existed between the Shell Chemical Company and Greening-Smith Company. It is the theory of defendants that there was no relation of agency between the two companies. Each of the parties was entitled to have his theory of the case presented to the jury in the instructions. The portions of the instructions dealing with the relation of master and servant evidently were inserted in an attempt to correctly define an independent contractor as contrasted with other relationships including that of master and servant and evidently were not intended as instructions on the relation of master and servant. We find no error in these instructions.

■ Plaintiffs complain of other instructions which are not models of excellence. After a study of all of the instructions we have reached the conclusion that, taken as a whole, they are not sufficiently erroneous to justify a reversal of the judgment, even if those not exactly correct were proposed by defendants.

■ We have examined the record carefully and cannot find any information even suggesting which party proposed any instruction. Neither does the record suggest that any instruction was given by the trial judge on his own motion. Under such a state of the record it is held that ''on appeal and in support of the judgment, it will be assumed that if any one of the instructions was erroneous that it was given at the request of the defendants.'' (Appellants here.) (*Fitzgerald* v. *Quinn*, 131 Cal. App. 457 [21 Pac. (2d) 656].) ''It is the settled law of this state that no one may claim the trial court erred in giving an instruction which such person requested and that one who claims error must

produce a record which shows error.'' (*Craig* v. *Boyes,* 123 Cal. App. 592 [11 Pac. (2d) 673].)

As it cannot be determined from the record that the challenged instructions were either requested by defendants, or that any of them were given by the trial judge on his own motion, we cannot presume error that the record does not disclose.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 15, 1939.