[Civ. No. 13763.   First Dist., Div. Two.   Oct. 13, 1948.]

HAREM CORPORATION (a Corporation), Appellant, v. STATE BOARD OF EQUALIZATION et al., Respondents.

Donahue, Richards, Rowell & Gallagher and Orlando J. Bowman for Appellant.

Fred N. Howser, Attorney General, J. Albert Hutchinson and Leo T. Englert, Deputy Attorneys General, for Respondents.

GOODELL, J.—The respondent board filed an accusation alleging that appellant on May 22, 1947, and thereafter did on its premises "sell, serve or otherwise dispose of alcoholic beverages, other than beer, for consumption on said premises, over or at a public bar or in a public barroom which was not then and there equipped and maintained for the sale and service of meals to the public, and in which meals were not then and there actually sold and served to the public." This charged a violation of section 22, Article XX of the Constitution and of section 53 of the Alcoholic Beverage Control Act (Stats. 1935, p. 1123, as amended; 2 Deering's Gen. Laws, Act 3796). The board's hearing, conducted by a hearing officer, resulted in a finding that "ever since May 22, 1947 the respondent has not conducted, and is not now conducting, the premises herein concerned as a bona fide public eating place . . ." The board suspended appellant's on-sale liquor license indefinitely. Appellant then sought in the superior court an annulment of the board's order by a writ of review. After a hearing judgment went in favor of the board and this appeal was taken.

The issue tried in the superior court was tendered by appellant in its petition by the allegation "That plaintiff is and at all times herein mentioned has been operating as a restaurant at 22nd Street and Broadway . . . Oakland . . ." This was found to be "untrue and without support of the evidence."

The issue on this appeal is thus stated by appellant: "Did appellant sell liquor in a bona fide restaurant, or in a public bar?"

"In determining whether or not a particular establishment qualifies under the Constitution it is the province of the board to ascertain the facts, for example, the physical aspects, equipment and supplies, the amount of food and liquor sold, and the manner in which the business is conducted . . . The existence of bona fides is not to be determined merely from the expressed intention of the licensee, but, like the determination of whether a place is a 'saloon' or a 'restaurant,' it must be ascertained objectively on the basis of all the physical characteristics and the actual mode of operation of the business . . ." (*Covert* v. *State Board of Equalization*, 29 Cal.2d 125, 133 [173 P.2d 545].)

The uncontradicted evidence at the board hearing shows that appellant has a lease on the ground floor of the building at the southwest corner of 22d Street and Broadway in Oakland. Within the leased area there are four rooms. In three of them liquor is sold across the bar, but in none of the three rooms are there any facilities for the preparation or service of food. In the other room there is a large restaurant but no bar. The kitchen connected with the restaurant is thoroughly equipped for the cooking and preparation of food but none of the kitchen or restaurant equipment is owned by appellant. On March 1, 1947, appellant, the lessee of the whole place, made a sublease to E. S. Ferrante and his wife of part of the ground floor, for the term of three years. The Ferrantes bought from a former sublessee all the kitchen and restaurant equipment for $27,500. Since then they have operated the large room under the name "The Cigar Box Restaurant," which room is connected by a doorway with the rooms where the bars are situated.

The lease is 22 typewritten pages in length and contains 35 articles embracing about as many subjects. Its preamble recites that the second party (Ferrante) "desires to operate a restaurant concession at the above described premises upon the terms and conditions hereinafter set forth." By article

2 appellant grants to Ferrante "the exclusive right, privilege and commission to maintain and operate a restaurant" on the premises. Article 3 calls for the deposit of $1,000 as a guarantee of performance by Ferrante. Article 4 provides for a "total guaranteed payment" by Ferrante of at least $13,500 (which is $375 a month for three years) "for the concession heretofore described" payable in monthly installments. In addition it calls for certain percentages of Ferrante's gross monthly sales, with provisions for the checking and auditing of such sales by appellant. The agreement speaks of "Second Party's business" and of "moneys collected by Second Party in the operation of his business;" it provides that "Second Party shall conduct all of his business in the premises on a strictly cash basis." In article 8(h) "Second Party agrees to conduct his business in the premises under the name of 'The Cigar Box Restaurant' . . ." Article 11 speaks of "acceptance of possession of the premises" by second party. By Article 14 appellant reserves the right to enter the premises at any and all times during business hours to inspect the same also "to post notices of nonresponsibility" therein. Article 18 provides for reentry and repossession by appellant in case of a breach.

While the document speaks in several places of a "restaurant concession" it is, after all, a lease pure and simple. It contains the provisions frequently found in leases of business property, some of which have been mentioned. There is nothing in it showing any connection or identity of the restaurant with the bars operated by appellant or suggesting any unity of operation, management or control. The only provision which mentions potable is the following condition found in section 7: "Second Party agrees that he will not use or permit the premises to be used for any other purpose than for the sale of food and non-alcoholic beverages, with the exception of wine and beer . . ." a limitation contrary to actualities for Ferrante when asked "Is any liquor of any kind sold in the restaurant?" answered "Beer and wine, and the liquor that is brought in from the bar and served on the tables with the food."

The percentages of the gross monthly sales of the restaurant are nothing but rental under the language of the lease, which provides, as we have seen, for a "total guaranteed payment" of at least $13,500 payable in monthly installments of $375. Such percentages are "In addition to the

minimum guaranteed payment." Hence they do not make the appellant a co-owner or partner. The testimony is undisputed that appellant has no share in the restaurant profits and could not be held for losses, if any. Ferrante testified "I just operate the restaurant end of it—that is what my profits are derived from." He hires the restaurant help and buys the food and supplies. When asked what was done whenever the restaurant got calls from the bars for food he answered "We serve it, or the cocktail girls from the bar come and pick it up. . . . Q. They pay for it? A. Yes . . . Q. And when the people in your restaurant want drinks, they are brought from the bar into the restaurant? A. Yes. Q. And vice versa? A. Yes." It appears that when food is ordered in the bars it is paid for by the waitress before it leaves the restaurant.

The only decision which we are called upon to make is whether there is substantial evidence to support the finding of the court that appellant's allegation that it operated the premises as a restaurant was untrue. The evidence shows without conflict that the restaurant was operated not by appellant but by Ferrante and that the three bars were operated by appellant. It shows that the restaurant was operated under a three-year lease which granted Ferrante "the exclusive right, privilege and commission [concession?] to maintain and operate a restaurant." It shows, further, that Ferrante owns all the restaurant and kitchen equipment and that he operates the restaurant business without any control or supervision by appellant, and whatever profit is made is Ferrante's own; that appellant has no interest in the restaurant business and Ferrante has no interest in the business done at appellant's three bars. Under this evidence the court could not have made any other finding.

Section 22 of article XX of the Constitution, adopted in 1934, reads: ". . . Intoxicating liquors, other than beers, shall not be consumed, bought, sold, or otherwise disposed of for consumption on the premises, in any public saloon, public bar or public barroom within the State; provided, however, that subject to the aforesaid restriction, all intoxicating liquors may be kept and may be bought, sold, served, consumed, and otherwise disposed of in any bona fide hotel, restaurant, café, cafeteria, railroad dining or club car, passenger ship, or other public eating place, or in any bona fide club after such club has been lawfully operated for not less than one year . . ."

It is not within our province to say that the restaurant operated by Ferrante is not a bona fide restaurant, café or eating place, but simply to say, under the issue presented by appellant's petition for review, that *appellant does not operate it.*

It must be admitted that if a patron of the restaurant, seated at one of the tables, ordered a drink it would be obtained from the bar and brought to him at the table where he was eating, and, on the other hand, if a patron of one of the bars ordered food it would be obtained from the restaurant and brought to him in the bar, without his going into the restaurant, but it does not follow from such situation that the holder of the liquor license sells liquor in a bona fide restaurant, café or other public eating place.

As said in the Covert case, 29 Cal.2d 134 [173 P.2d 545], "the Constitution plainly contemplated the coexistence of two businesses—sale of food and sale of liquors" and "the existence of one business was made a prerequisite to the operation of the other." The record in this case presents an instance where one of these businesses, the sale of liquors, is operated by appellant, the other, the sale of food, by Ferrante.

The judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied November 12, 1948, and appellant's petition for a hearing by the Supreme Court was denied December 9, 1948. Carter, J., voted for a hearing.