[Civ. No. 15340. First Dist., Div. One. Jan. 19, 1953.]

RAYMOND F. LUCE et al., Plaintiffs and Respondents, v. VERNE C. SUTTON, Defendant and Respondent; SAM TRONDHJEM, Appellant.

Rosendale, Thomas & Muller for Appellant.

L. W. Wrixon for Respondents.

BRAY, J.—In an action for the price of meat sold and de-livered, plaintiffs obtained judgment against both defendants. Defendant Trondhjem alone appeals.

### QUESTIONS PRESENTED

1. Was there evidence of agency? 2. Are the findings that defendants were copartners, which findings admittedly are unsupported, fatal to a recovery on the agency theory?

### PLEADINGS

In the caption of the complaint defendants were described as "Verne C. Sutton and Sam Trondhjem, *individually* and as copartners doing business under the firm name and style of The Big Hat Cafe."* The first count of the complaint alleged such copartnership. It then alleged *"defendants above named* became indebted to plaintiffs" for goods, wares and mer-chandise sold and delivered "at the special instance and re-

---

*Except where otherwise noted, emphasis is added by us.

quest of *said defendants,*" that "*said defendants*" promised to pay $2,969.99 therefor, and that said sum is now due, owing and unpaid by "said defendants" to plaintiffs. The second cause of action incorporated the copartnership allegation from the first count and then alleged that "*defendants above named*" became indebted to plaintiffs on a book account for goods sold and delivered to "*said defendants.*" As in the first count reference was made several times to "*said defendants.*" The third count also incorporated the copartnership allegation from the first count. It then alleged an account stated between defendants "above named" and plaintiffs. Apparently this count was abandoned, because it is completely ignored in the findings and no reference is made to it by either party. The fourth count likewise incorporates the copartnership allegation from the first count. It then alleges a cause of action for the reasonable value of goods, wares and merchandise sold and delivered, charging "*defendants*" as in the other counts. Each defendant filed a separate answer denying generally and specifically the allegations of the complaint. The find ings found all the allegations of the first, second and fourth counts of the complaint to be true and defendants' denials untrue. Thus, the court found the defendants to be copartners and that "*defendants aboved named*" were indebted to plaintiffs as alleged in the three counts. The court gave judgment against both defendants *individually* and as copartners for $1,003.75 together with interest.

## EVIDENCE

Trondhjem was the lessee of a building in Salinas which contained a restaurant known variously as The Big Hat Coffee Shop, Big Hat Restaurant and Big Hat Café. He owned the equipment in the restaurant. He also operated a bar in the building. The bar and restaurant have separate front entrances. There is a door between the two. There is only one street number and address for the bar and restaurant, although there were two different mail deliveries. Plaintiffs' meat was all delivered to the restaurant. Sutton was a cook or chef by trade. In April or May, 1950, Sutton came to the Big Hat Café. There is a direct conflict in the testimony concerning his capacity there. Sutton testified he was hired by one Moxley to cook for $75 per week and he knew nothing of the arrangement between Trondhjem and Moxley. He cosigned a note with Moxley to Trondhjem for $150 advanced by the latter to start the operation. Trondhjem testified that he orally subleased the restaurant to Moxley and

Sutton on a percentage basis to be paid when they "got going good." Because Trondhjem had previously found Sutton irresponsible, Moxley was to be responsible for all bills. The first charge made by plaintiffs to the Big Hat Café was February 6, 1950 (apparently before Sutton came). Plaintiffs' salesman had told plaintiffs' branch manager that Trondhjem was the owner and plaintiffs' ledger carried him as such. However, Trondhjem never ordered nor paid for any goods. Later, the sales were made on Sutton's credit also. Moxley was employed by Safeway Stores. He and Sutton operated the restaurant for about a month, Sutton being the chef and in charge. Before Moxley left, Trondhjem brought Sutton a written lease to sign. Sutton refused. Safeway objected to Moxley's being in the restaurant business. Moxley then left the business entirely, Sutton staying on, cooking and running the restaurant until about August 4th, a period of roughly two months. Until "around May" plaintiffs' business with the Big Hat Café was on a cash basis. Then plaintiffs extended credit to Sutton based on his statement to plaintiffs' representative that he was operating the restaurant on a "lease basis" and that Trondhjem got a certain percentage of the "take." At no time did plaintiffs' representative talk to Trondhjem. Cash payments to plaintiffs were made from time to time by Sutton. Sutton employed the waitresses and dishwasher in the restaurant but Trondhjem paid them, although Trondhjem received none of the receipts of the restaurant except for reimbursement by Sutton for payroll, sales, social security and unemployment taxes. Trondhjem signed and filed the social security, unemployment, compensation, and federal income tax returns and reports to the State Board of Equalization for sales tax and paid all these taxes. In Trondhjem's personal income tax return he included these moneys received and paid out by him. The utility accounts were in his name as were both the bar and restaurant licenses. His explanation of paying the waitresses and the social security payments was "So that I would be within the regulations," as he knew that under the law he could not run a bar unless he ran a restaurant also. One Bailey, who took over the operation of the café on August 7th, testified that Trondhjem told him that "he had a cook in there that was working there" and that he was tired of the responsibility of the restaurant and would like to lease it. Trondhjem denied making this statement. Trondhjem did not fix prices in the restaurant, received no restaurant mail.

Although the restaurant cash was not entered in Trondhjem's books or traced to the bank account, a notation was made therein of restaurant receipts as supplied by Sutton and "net settlement sheets" were made up. The cash register slips were turned over to Trondhjem. Checks on the restaurant bank account could only be signed by Moxley and Sutton and then only by Sutton.

Sutton testified that after a month Moxley left him in the restaurant to run it until Trondhjem got someone to take Sutton's place as cook. Trondhjem never paid Sutton anything for his work. Sutton was paid $75 per week by check signed by Moxley. After Moxley left Sutton paid himself by check at least on two occasions. At the time the restaurant closed in August Sutton had not been paid in full. At that time Sutton had drawn a $100 check in favor of plaintiffs. There was not sufficient moneys in the bank to cover the check, so Sutton took the cash that was on hand and deposited enough to meet the check. This left a balance of $1,003.75 due plaintiffs for meat furnished the restaurant. After the restaurant was closed and Bailey took possession no accounting to Sutton of the inventory turned over to Bailey was made by Trondhjem.

## AGENCY

A reading of the reporter's transcript as well as the briefs on this appeal shows that the case was tried, not on the theory of defendants being partners, but on the theory that a principal and agent relationship existed between Trondhjem and Sutton. Plaintiffs so stated at the trial. Plaintiffs concede that the evidence does not justify a finding of partnership between Trondhjem and Sutton. Appellant contends that the court's theory was that both an actual and an ostensible agency was shown. ■ We do not find it necessary to determine whether the evidence shows an ostensible agency for the reason that there is ample evidence upon which a finding of actual agency can be made. The evidence clearly shows that when the original leasing of the property by Moxley fell through, Sutton, who had been hired by Moxley as cook at $75 per week, remained on in operation of the restaurant for Trondhjem. While there was no express agreement between Trondhjem and Sutton, the evidence shows that in order to keep the restaurant open, which was necessary for Trondhjem to operate his bar (*Harem Corp.* v. *State Board of Equalization,* 87 Cal.App.2d 915 [198 P.2d 48]), Trondhjem maintained Sutton in possession on the same terms

as Sutton had been working for Moxley, namely, $75 per week. Trondhjem paid the waitresses and the dishwasher, the social security and other taxes, made the necessary reports and kept the license in his name.

 "It is a settled rule of the law of agency that a principal is responsible to third persons for the ordinary contracts and obligations of his agent with third persons made in the course of the business of the agency and within the scope of the agent's powers as such, although made in the name of the agent and not purporting to be other than his own personal obligation or contract." (*Geary St. Park & Ocean R. Co.* v. *Rolph,* 189 Cal. 59, 64 [207 P. 539].) "A creditor may sue an undisclosed principal when found although he may not have known of the existence of such principal at the time the debt was incurred." (*Hulsman* v. *Ireland,* 205 Cal. 345, 352 [270 P. 948].) The evidence shows that credit was not extended by plaintiffs to Sutton exclusively. The credit report received by plaintiffs was on the Big Hat Café, not on Sutton personally. The charge on plaintiff's books was to the café and Trondhjem was shown thereon as owner. Plaintiffs had been informed by Sutton of Trondhjem's interest in the café at least to the extent of 6 per cent of the profits. Hence, the rule set forth in *Walton* v. *Davis,* 22 Cal.App. 456 [134 P. 795], and *Rigney* v. *De La Salle Institute,* 10 Cal.App.2d 492 [52 P.2d 579], that the doctrine of undisclosed principal does not apply where the creditor gives exclusive credit to the agent, is not applicable here.

Appellant cites *Hill* v. *Citizens Nat. Trust & Sav. Bank,* 9 Cal.2d 172, 176 [69 P.2d 853], for the proposition that in order to recover from an undisclosed principal the creditor must not be guilty of negligence. That rule applies to situations of ostensible agency, and not to those of undisclosed agency.

### FINDINGS

This brings us to the question of whether the trial court found that such agency existed. It did not expressly so find. In the complaint defendants were sued both individually and as partners. The charging portions of the various counts charged "defendants above named" thereby including them in both their individual and partnership capacities. In finding in the terms of the complaint, the court found them liable in both capacities. But such a finding is contradictory. Sut-

ton could not have been both Trondhjem's partner and his agent. Again, the court found Sutton liable as well as Trondhjem. ■ " 'The rule is well established that where one deals with another believing him to be a principal, and subsequently learns that he was dealing with an agent of an undisclosed principal, he may recover either from the person with whom he dealt or from the undisclosed principal.' " (*Grosso* v. *Monfalcone, Inc.*, 13 Cal.App.2d 405, 409 [56 P.2d 1266].) Had defendant Trondhjem so demanded in the trial court, he could have required plaintiffs to elect whether they desired to hold the principal or the agent. (*Grosso* v. *Monfalcone, Inc., supra*, 13 Cal.App.2d 405, 409.) He did not do so. ■ Now, "a failure to demand such an election in the lower court constitutes a waiver of the right." (*Fleming* v. *Dolfin*, 214 Cal. 269, 271 [4 P.2d 776, 78 A.L.R. 585]; *Craig* v. *Buckley*, 218 Cal. 78, 82 [21 P.2d 430]; *McEwen* v. *Taylor*, 106 Cal.App.2d 25, 30 [234 P.2d 754].) Trondhjem cannot complain of the judgment against Sutton. But such judgment is important in determining whether there is a sufficient finding of agency. ■ In view of the contradictory nature of the findings we must hold that the court did not adequately find on the agency question.

But that does not end the appeal. This court has the right to make findings on the subject. (Code Civ. Proc., § 956a; *People* v. *One 1949 Ford Tudor Sedan, ante*, p. 157 [251 P.2d 776]; *Gustafson* v. *Blunk*, 4 Cal.App.2d 630, 635 [41 P.2d 953].)

■ As said in *San Jose etc. Title Ins. Co.* v. *Elliott*, 108 Cal.App.2d 793, 803 [240 P.2d 41], where there is a total failure to find on a material issue and the evidence on it is conflicting, this court will not make findings. But here, there was not a total failure. ■ While the findings on agency are not specific, the findings as made by the trial court are sufficient to constitute a passing by that court on the credibility of the witnesses on the agency issue, because the trial court obviously declined to believe defendants' testimony. In making findings in this case we are not passing on the contradictory evidence without its first having been passed on by the trial court. We are merely making specific findings after the trial court has definitely indicated its determination of the credibility of the witnesses. This is in line with the purpose of section 956a as discussed in *Tupman* v. *Haberkern*, 208 Cal. 256 [280 P. 970], where it was pointed out that whenever possible and the interests of justice would

seem to require, the reviewing court has the power to make findings in addition to, and even contrary to, those made by the trial court. "This section shall be liberally construed to the end, among others, that wherever possible causes may be finally disposed of by a single appeal and without further proceedings in the trial court except where the interest of justice requires a new trial." (Code Civ. Proc., § 956a.)

Sending the case back for findings or a new trial would not be warranted. The case was tried on the agency theory. Trying it again would be merely a duplication. Exercising the power conferred by section 956a, Code of Civil Procedure, we hereby add to the findings one to the effect that in the incurring of the indebtedness upon which plaintiffs' causes of action are based Sutton acted as the agent of Trondhjem.

The findings are so amended, and the judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.